People of the State of Illinois, Appellee, v. Donald Somerville and Marjorie Kullerstrand, Appellants.

Gen. No. 51,415.

First District, Fourth Division.

October 16, 1967.

Julius Lucius Echeles, of Chicago, for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James A. Stamos, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendants, Donald Somerville and Marjorie Kullerstrand, were indicted on November 3, 1965. The indictment charged that on March 24, 1963, they had committed the offense of theft [1] in that they knowingly obtained

---

[1] Ill Rev Stats 1963, c 38, § 16–1. Theft. A person commits theft when he knowingly:

(d) Obtains control over stolen property knowing the property to have been stolen by another, and

unauthorized control over stolen property, to wit: $1,300 in United States currency, the property of Zayre of Bridgeview, Inc., knowing the said property to have been stolen by another, and intending to deprive said Zayre of Bridgeview, Inc., permanently of the use and benefit of said property, in violation of chapter 38, section 16–1 (d) of the Illinois Revised Statutes (1963).

The case was tried before a jury and a verdict was returned finding defendants guilty. Donald Somerville was sentenced to 2 to 10 years in the penitentiary, and Marjorie Kullerstrand was placed on probation for three years. In this court the defendants urge:

1) That they were twice put in jeopardy for the same offense;

2) That the State improperly suggested the existence of damaging evidence by means of cross-examination, but failed to impeach the denials of the defendants;

3) That the State improperly presented evidence outside the scope of cross-examination impugning the morals of the defendants.

A previous indictment had been returned against the defendants on March 19, 1964, which indictment charged them with committing the offense of theft on March 24, 1963, in that they knowingly obtained unauthorized control over stolen property, to wit: $1,300 in United States currency, the property of Zayre of Bridgeview, Inc., know-

---

(1) Intends to deprive the owner permanently of the use or benefit of the property; or

(2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit.

ing the same to have been stolen by another in violation of chapter 38, section 16–1(d), Ill Rev Stats 1963.

A jury trial was commenced on the first indictment and twelve jurors were duly impaneled and sworn on November 1, 1964, after which the trial was continued to the next day. On November 2, the State's Attorney moved for a mistrial and to nolle prosse on the ground that the indictment did not allege a crime and was therefore void. The court granted the State's motion over defendants' objection. A juror was withdrawn from the box and a mistrial declared.

On November 3, 1965, a second indictment was returned, charging the defendants with the offense of theft on March 24, 1963, as set forth above. Defendants were arraigned on the second indictment on November 16, 1965. Thereupon, the defendants filed a motion to dismiss the indictment on the grounds that they had previously been indicted on March 19, 1964; that a jury was selected and sworn to try the issues; and that "on November 2, 1965 the State made a motion to Nolle Prosse said indictment which was sustained over the objection of your petitioner." The motion further recited: "4. That the only difference between indictment 64–916 and indictment 65–3017 is that the words 'intends to deprive the owner permanently of the use . . . property' have been added to the latter indictment." The court denied the motion.

■■ Before us defendants argue that since the trial was commenced under the first indictment (64–916) and a jury impaneled and sworn, the defendants were thereby placed in jeopardy, and consequently the court must discharge them. In their brief defendants state:

"Sec 3–4(a)(3), Chap 38 states that 'A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution . . . (3) was ter-

minated *improperly* after the jury was impaneled and sworn . . .' " (Emphasis added.)

In order to have the statute apply it is necessary that the first prosecution be terminated improperly. In the Notes in Smith-Hurd Annotated Statutes to the section in question the statement is made:

> "The point at which jeopardy attaches in a jury trial is generally considered to be that at which, in a court of competent jurisdiction and upon a *valid indictment or information,* the defendant has been arraigned and has pleaded, and the jury has been impaneled and sworn."

In 22 CJS, Criminal Law, § 246, it is stated:

> ". . . the general rule is that, in order that jeopardy may attach, there must be a valid indictment, . . . So, where the indictment or information is so defective in form or substance that it will not support a conviction, it cannot form the basis of proceedings which will put accused in jeopardy and bar another prosecution. . ."

In People v. Edge, 406 Ill 490, 94 NE2d 359, the court said at 493:

> "To give a court jurisdiction in a criminal case, it is essential that the indictment or information charge the accused with a crime. (People v. Harris, 394 Ill 325; People v. Nickols, 391 Ill 565.) Moreover, where the statutory definition of a crime includes the intent with which the act is committed as an element of the offense, the intent must be alleged. (People v. Harris, 394 Ill 325; People v. Barnes, 314 Ill 140.)"

In People v. Harris, 394 Ill 325, 327, 68 NE2d 728, the court said:

"The essential elements of the crime of receiving stolen property as prescribed by section 239 of division I of the Criminal Code (Ill Rev Stats 1945, chap 38, par 492,) are: (1) that the property has, in fact, been stolen by a person other than the one charged with receiving it; (2) that the one charged with receiving it had actually received the property stolen or aided in concealing it; (3) that the receiver knew that the property was stolen at the time he received it; and (4) that he received the property for his own gain or to prevent the owner from again possessing it.[2] People v. Dalke, 336 Ill 446; People v. Prall, 314 Ill 518; People v. Ensor, 310 Ill 483."

The court also said:

"It has been held that where the statutory definition of a crime includes the intent with which the act was committed as an element of the offense, it is necessary that the intent should be alleged. In McCutcheon v. People, 69 Ill 601, it was said: 'Where the intent is mentioned as an element of the offense created by a law, it ought to be alleged; . . .' "

Without such an allegation the court held that the indictment does not set forth a crime as defined by statute. Also see People v. Goffman, 30 Ill2d 501, 198 NE2d 323.

■■ Chapter 38, section 16–1, previously quoted in this opinion, states the requirements for an indictment or conviction of theft where the party obtains control over stolen property knowing the property to have been stolen by another. Under the rule laid down in People v. Edge and People v. Harris, supra, the first indictment

---

[2] This section of the then statute is substantially the same as the present one.

was fatally defective and void. The court ruled properly in denying defendants' motion to discharge defendants at the time of the trial of the second indictment.

The State introduced evidence that there was a robbery at Zayre of Bridgeview, Inc.; that about $22,000 was taken, $9,000 of which was dropped in the vestibule and recovered.

Leon Arnold, the State's chief witness, testified that while drinking with one Douglas Aldridge on March 23, 1963, in the early evening he met Eddie Somerville,[3] and that they went to Eddie's home near Blue Island, where they found Paul Langusch, Robert Somerville and his brother, Gail Somerville.[4] Arnold further testified that they later robbed the Zayre store; that the next day Gail Somerville picked up Douglas and Arnold and drove them to the home of defendant Marjorie Kullerstrand, where they saw Robert, Eddie and Donald Somerville and Paul Langusch. At that time Donald Somerville was a police officer in the City of Chicago. Arnold stated that when he was introduced Donald Somerville asked Aldridge how it went and Aldridge said "It was rough." He further testified that Aldridge then asked if anyone knew how the man was who was shot and Donald Somerville said he was okay. Arnold testified that they then "gave them what money we had and they put it on a coffee table"; that the money was counted, totaling $13,000, and divided as follows: Arnold, Aldridge, Langusch and Eddie Somerville each received $2,500, and Robert, Gail and Donald Somerville $1,000 each; that Donald said each should give Marjorie Kullerstrand $50

---

[3] Eddie Somerville was convicted of armed robbery and the conviction was upheld in this court in People v. Eddie Somerville, 88 Ill App2d 134.

[4] Robert Somerville, Gail Somerville, and Paul Langusch were previously convicted and their convictions upheld on appeal in People v. Somerville, 71 Ill App2d 381, 219 NE2d 116.

for the use of her home, and that Arnold, Aldridge, Eddie Somerville and Langusch each gave her $50 out of the money received.

The defendants put on certain alibi witnesses. Donald Somerville took the stand and in cross-examination was asked the following question by the Assistant State's Attorney: "Do you know of your own knowledge, Mr. Somerville, if your brother, Robert, was ever a security officer at Zayre's Department Store?" Defendants' counsel objected; the court overruled the objection, and the witness answered, "No, I do not. I wasn't that close to him."

In this court the defendants argue that if it was shown that Robert Somerville was in on the planning of the robbery, his employment as a security officer would in a manner tend to corroborate Arnold's testimony. The argument is farfetched. It is difficult to see why there would be corroboration of Arnold's testimony even if the question had been answered affirmatively. In any case, the witness stated that he did not know, and if the question was in error, it was not an error which would require reversal.

The defendants also contend that the State improperly questioned Virginia Kullerstrand, the daughter of defendant Marjorie Kullerstrand. Virginia had testified that she lived with her mother, and denied that on the date in question she saw six or seven men in the house, and denied seeing large sums of money on tables in the house. On cross-examination she testified that Donald Somerville had been to her home several times before March 24, 1963. The State then asked, "Did he ever stay overnight at your house?" Defendants' counsel objected and the court overruled the objection, after which defendants moved for a mistrial, which was denied. The witness denied that Donald Somerville had ever stayed overnight at her home. The State's Attorney then asked Virginia if she had ever told Officer Walsh that Donald

Somerville had stayed overnight at their house on numerous occasions. The objection of counsel for defendants was overruled, and Virginia said she did not remember what she had told Officer Walsh. On rebuttal Officer Walsh testified that when he spoke to her on March 4, 1964, Virginia told him that Donald Somerville had spent the night in her home with her mother on numerous occasions. The question had been objected to and the objection overruled.

■ ■ The defendants here argue that the question was irrelevant and prejudicial. In defendants' brief it is admitted that if the question were relevant no question could be raised as to its prejudicial effect upon the jury. The defendants also argue that the question was beyond the scope of cross-examination, and again admit that if the question were relevant the objection would fall. The question was relevant.

Both Marjorie Kullerstrand and Donald Somerville had testified that Donald Somerville was not present in her home on March 24, 1963. In People v. McGovern, 307 Ill 373, 377, 138 NE 632, the court said:

> "It is perfectly proper to inquire of a witness, in order to show his bias or prejudice, as to his relations with the accused and his interest in the result of the suit. (1 Wharton on Crim Evidence,—10th ed— sec 477; Ross v. State, 71 Tex Crim 493.) It has been said that the feelings of bias and relationship of the witness are never collateral. (Underhill on Crim Evidence,—2d ed—sec 222.)"

■ It has been held that the latitude of cross-examination of even the defendant in a criminal case is controlled by the sound discretion of the trial court. People v. Gasior, 359 Ill 517, 195 NE 10. The holding in other jurisdictions is the same. Parsley v. Commonwealth (Ky), 306 SW2d 284 (1957).

220

The ruling of the trial court was proper. Finding no error in the record, the judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.