THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY O'DELL, Defendant-Appellant.

Fifth District   No. 79-214

Opinion filed May 16, 1980.

Robert H. Rice, of Belleville, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Martin N. Ashley and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mme JUSTICE SPOMER delivered the opinion of the court:

Defendant Harry O'Dell and his wife, Pansy O'Dell, were jointly indicted for arson, attempt arson, solicitation to commit arson, conspiracy to commit arson, and theft by deception over $150. Mr. and Mrs. O'Dell were the owners of two apartment buildings, 1633 and 1637 North 45th Street, in East St. Louis, one of which was destroyed and the other damaged by a gasoline-based fire caused by arson on July 16, 1975. As a result of the fire, the O'Dells received a total of $34,357.48 from their insurer, Hartford Insurance Company.

Defendant was granted a severance prior to trial. On January 24, 1979, he was tried by a jury and found guilty of arson, attempt arson, and both counts of theft by deception. Verdicts were directed in his favor on the other charges. The court sentenced him to concurrent terms of two years' probation for each offense and to a fine of $10,000 for the arson.

On appeal, defendant challenges the trial court's denial of his motion to suppress the tape recording of his conversation with an informant for the Illinois Division of Criminal Investigation. He also challenges the sufficiency of the arson indictment, and alleges certain errors at trial.

For the reasons hereinafter set forth, we affirm.

The use of eavesdropping devices, where one party to the conversation consents, is controlled by article 108A of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 108A). Application is made to a circuit judge for an order authorizing such monitoring, and the application must be authorized by the State's Attorney. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1.) The written application must include, *inter alia*, (1) the identity of the law enforcement officer making the application and the authorizing State's Attorney; (2) a statement of the facts and circumstances relied upon, including (a) details of the felony involved;

(b) a description of the type of communication sought to be monitored; (c) the identity of the consenting party; and (d) if known, the identity of the person whose conversations are to be overheard; and (3) a statement of "the period of time for which the use of the device is to be maintained or, if the nature of the investigation is such that the authorization for use of the device should not terminate automatically when the described type of communication is overheard or recorded, a description of facts establishing reasonable cause to believe that additional conversations of the same type will occur thereafter." Ill. Rev. Stat. 1977, ch. 38, par. 108A—3.

In order to authorize use of the eavesdropping device, the circuit judge must find (a) consent by one party; (b) reasonable cause to believe an individual is committing, has committed, or is about to commit a felony; and (c) reasonable cause to believe that conversations concerning that felony will be obtained through such use. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—4.) The judge's authorizing order must specify (1) the identity of the consenting person; (2) the identity of the other party, if known; and (3) the period of time in which use of the device is authorized, including whether the use shall automatically terminate when the described conversations have been first obtained. Ill. Rev. Stat. 1977, ch. 38, par. 108A—5.

The statute also provides for suppression of the contents of a recording by an aggrieved person. A motion to suppress must be made before trial unless there was no previous opportunity. Ill. Rev. Stat. 1977, ch. 38, par. 108A—9.

In the case at bar, Special Agent Martin McCarthy petitioned for an order authorizing the use of an eavesdropping device. The petition was accompanied by a consent form, executed by Frank Crockett, and an executed authorization from the State's Attorney. To establish that a felony had been, was being, or was about to be committed, the petition asserted as follows:

"Frank Eugene Crockett informed S/A Martin F. McCarthy that on July 16, he, along with Roy Lewis, set a gasoline-based fire and explosion at 1633 North 45th St., East St. Louis, Illinois. He said that he was paid to set afire both 1633 North 45th St. and 1637 North 45th St. by the owner of the properties, Harry O'Dell, of Belleville, Illinois. Crockett said that it was O'Dell's intent to collect the insurance money on the property. The East St. Louis Fire Department record of the explosion at 1633 North 45th indicated that they suspect arson as the cause. A fire department report also indicated that 1637 was saturated with gasoline at the time of the explosion, but that firemen were able to prevent its ignition.

> Crockett has met with O'Dell approximately ten (10) times in the past and he discussed the burning of the houses on No. 45th St. several times prior to the explosion."

The petition specified the type of conversation involved, and the location from which it would be monitored. It also specified defendant Harry O'Dell as the party whose conversations were to be overheard. The time period required in the petition was from 9 a.m. September 20, 1977, to 11:59 p.m. on September 24, 1977. The petition requested that the authorization not terminate automatically on the occurrence of a conversation, but continue throughout the five-day period. No separate facts establishing reasonable cause to believe additional conversations would take place were alleged.

On September 19, 1977, the judge entered an order granting the Illinois Division of Criminal Investigation authority to use an eavesdropping device, consistent with the provisions of the petition. On September 21, 1977, Frank Crockett engaged defendant in a recorded conversation at defendant's apartment, in which defendant acknowledged that he had arranged the arson of his properties. Subsequently, defendant was indicted for the instant offenses.

On March 29, 1978, defendant moved to suppress the recorded conversation. No witnesses were called at the hearing on the motion, and it was denied on May 11, 1978. On January 24, 1979, during defendant's opening statement at trial, counsel mentioned that he had interviewed Frank Crockett on June 30, 1978, and that Crockett had stated that he had never had a conversation with defendant prior to the recorded conversation.

At trial, Crockett testified that in early 1975 he had been solicited by Roy Lewis to participate in the arson of the O'Dell buildings. On July 16, 1975, he and Lewis saturated the buildings with gasoline and used cigarettes and matches as a delayed ignition. Prior to that date Crockett had at least 12 discussions with Roy Lewis concerning the proposed fires. Defendant had been at Lewis' home during "a couple" of the discussions which occurred in defendant's presence, although the defendant and Crockett had not conversed directly. Crockett also testified that prior to September 21, 1977, he had not told Agent McCarthy that he had had 10 conversations with the defendant. However, he asserted that prior to the recorded conversation he may have been in defendant's company a total of approximately 10 times, one such meeting occurring in the house where defendant resided at that time. He further testified that defendant agreed to pay Lewis and him a total of $3,000 per house, and that they were paid for only one house.

Defendant's first issue on appeal challenges the court's order authorizing the eavesdrop and recording of his conversation with Frank

Crockett. He (1) asserts a lack of "reasonable cause" for believing that defendant was committing or had committed the felony of arson or for believing that particular conversations concerning the arson would be obtained through the eavesdrop, and (2) claims that the order was fatally defective for failure to terminate automatically upon the occurrence of the conversation, since the petition did not allege any facts to show why the eavesdrop should not so terminate.

We first note that eavesdrops made with one-party consents are not in violation of the fourth amendment. (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122.) Article 1, section 6 of the 1970 Illinois Constitution merely prohibits "unreasonable * * * interceptions of communications by eavesdropping devices or other means." This prohibition is directed against wiretaps where the consent of no party is obtained; one-party consent recordings are accepted as reasonable and beyond the scope of the fourth amendment guarantees. (*People v. Mosley* (1978), 63 Ill. App. 3d 437, 379 N.E.2d 1240, 1244.) Accordingly, restrictions on one-party consent recordings are statutory only and not unconstitutional.

Defendant first highlights the two-year time interval between the fire and the filing of the eavesdrop petition, and asserts that "remoteness" or "staleness" removed any reasonable cause to believe that a conversation concerning the arson would take place. He compares the instant case with cases involving search warrants, where the interval between the "viewing" and the search warrant is an important consideration in determining probable cause.

■■ However, those cases are inapposite here. Whether there is probable cause to believe that the subject matter of a search will be found at a given location clearly depends on timeliness of the allegations in the affidavit for the search warrant. Objects are easily moved. On the other hand, a felon's guilty knowledge is usually retained, and whether or not it will surface in conversation is therefore not particularly dependent on considerations of time. Furthermore, even the search warrant cases cited by defendant stand for the proposition that there can be no formulized time limit set on how old the information contained in the affidavit may be; rather, whether or not it is too remote must depend upon all the facts and circumstances of the particular case. (*People v. Morrison* (1973), 13 Ill. App. 3d 652, 300 N.E.2d 325; *People v. Stephens* (1973), 12 Ill. App. 3d 215, 297 N.E.2d 224.) Accordingly, we find there was ample reasonable cause to believe that defendant's participation in the arson might become the subject of a conversation with one of his co-participants, even though two years had passed.

■■ Defendant's primary challenge is to the accuracy of the allegations in the verified petition that "Crockett has met with O'Dell approximately ten

(10) times in the past and he discussed the burning of the houses on North 45th Street several times prior to the explosion." At one point during the trial, Crockett testified on cross-examination that he had never talked with defendant prior to the September 21, 1977, conversation which he taped. Defense counsel then moved to suppress the recording based on that inconsistency, and claimed that Crockett had informed him of the inaccuracy during a July 30, 1978, interview. The State contends that defendant waived this issue by failing to raise it prior to trial. We agree. The statute provides that such a motion must be made "before the proceeding unless there was no previous opportunity for such motion." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—9(b).) Here, defense counsel was aware of the inaccuracy in the petition seven months prior to trial, yet did not raise it until the trial was in progress. This unnecessary delay waived such contention.

■ Moreover, when considered on the merits, this inaccuracy in the petition does not remove reasonable cause for issuance of the eavesdrop authorization. Defendant acknowledges the general rule that any challenge to a search warrant (which he likens to a wiretap authorization) must be limited to questions of sufficiency based on the face of the affidavit, as the accused is not allowed to go beyond the "four corners" of an affidavit to show lack of probable or reasonable cause. (*People v. Bak* (1970), 45 Ill. 2d 140, 144-46, 258 N.E.2d 341, 343-44, *cert. denied* (1970), 400 U.S. 882, 27 L. Ed. 2d 121, 91 S. Ct. 117; *People v. Stansberry* (1971), 47 Ill. 2d 541, 544, 268 N.E.2d 431, 433, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121.) He urges that the modification of that rule permitted in the case of *Franks v. Delaware* (1978), 438 U.S. 154, 154-55, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676-77, is equally applicable to the present case. In the *Franks* case, defendant had been convicted for the offense of rape. At a hearing on his motion to suppress evidence connecting him to the crime and seized pursuant to a search warrant, defendant had offered evidence directly contradicting the facts alleged in the police officers' affidavit for search warrant: affiants had alleged that their information was gained through conversations with two citizens, both of whom defendant contended would now swear that they had neither spoken to the affiants at any time nor given them the information alleged in the affidavit. The trial court refused the hearing, defendant made an offer of proof, and on appeal the Supreme Court reversed and remanded, holding that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in his affidavit for a search warrant, and the alleged false statement was necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at defendant's request. If upon such

hearing defendant establishes these allegations, then the search warrant must be voided and the fruit of the search excluded. In the case at bar, defendant's reliance on *Franks* is misplaced.

In the first place, the *Franks* decision permitting a challenge to an affidavit is based on the protections of the fourth amendment, which do not apply to one-party consent eavesdropping (*Mosley*, at 441). Also, the scope of that case is narrowly limited; the burden is upon the defendant to prove by a preponderance of the evidence that perjury has been committed by the affiant in making the affidavit. The erroneous statements in issue must be within the personal knowledge of affiant, not the informant, and must be such as to show his bad faith in making the misrepresentations which led the court to authorize the wiretap. (*Rugendorf v. United States* (1964), 376 U.S. 528, 532, 11 L. Ed. 2d 887, 891, 84 S. Ct. 825, 828.) In the *Franks* case, the affidavit alleged, *inter alia*, as follows:

> "On Tuesday, 3/9/76, *your affiant contacted* Mr. James Williams and Mr. Wesley Lucas of the Delaware Youth Center where Jerome Franks is employed *and did have personal conversation* with both these people. * * * Mr. James Williams *revealed to your affiant* that the normal dress of Jerome Franks does consist of a white knit thermal undershirt and a brown leather jacket, * * * Mr. Wesley Lucas *revealed to your affiant* that in addition to the thermal undershirt and jacket, Jerome Franks often wears a dark green knit hat." (Emphasis added.) (438 U.S. 154, 157, 57 L. Ed. 2d 667, 673, 98 S. Ct. 2674, 2677.)

The integrity of that affidavit was directly placed in issue when defendant made an offer of proof that the affiants did not, as claimed, speak directly to Lucas and Williams nor receive from them the alleged information concerning Franks' clothing. Obviously, whether such conversation had taken place was a matter within the personal knowledge of the affiants. Under such circumstances, the fourth and fourteenth amendments mandated that defendant be permitted to go outside the four corners of the affidavit to attack its veracity. In the instant case defendant neither argues nor makes a showing of purposeful misrepresentation by affiant McCarthy. Nor could he. What facts were in McCarthy's personal knowledge? Only one—that he had a conversation with Crockett. He stated that in his petition and in his trial testimony, and defendant had no contrary evidence. Defendant merely relies on the variances between Crockett's statements to McCarthy which served as a basis for McCarthy's affidavit, and Crockett's trial testimony, but this does not fall within the *Franks* rule. Furthermore, the circumstances surrounding Crockett's meetings with Roy Lewis and defendant support the belief that Crockett had been in defendant's presence a number of times, even if

no conversations took place. Crockett testified that prior to the taping, he may have been in defendant's company a total of 10 times, one such meeting occurring in defendant's home, and he testified to discussions in defendant's presence which he and Lewis had regarding the arson. Defendant admitted that he and Lewis were long-standing friends, and that Lewis had sometimes worked for him. Defendant could not show that the alleged inaccuracy was anything more than mere negligence or mistake on Crockett's part. The affidavit is presumed valid, and allegations of negligence or innocent mistake are insufficient in an attack upon it. (*Franks*, 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.) Thus, defendant has not met his burden here. *People v. Anderson* (1979), 74 Ill. App. 3d 363, 368-69, 392 N.E.2d 938, 943.

■ Even without the allegation that Crockett had met with defendant 10 times, the petition contained sufficient facts to support a finding of reasonable cause for the eavesdropping authorization. The informant, Crockett, told the affiant that he was personally involved in the arson, the occurrence of which defendant did not dispute. The Supreme Court has held that admissions of crime carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. (*United States v. Harris* (1971), 403 U.S. 573, 583, 29 L. Ed. 2d 723, 734, 91 S. Ct. 2075, 2082.) The same rule was again enunciated in the case of *United States v. Carmichael* (7th Cir. 1973), 489 F.2d 983, 986-87, where a second informant's statements to the first informant—although hearsay upon hearsay—were held reliable as an exception to the hearsay rule because "the reliability of the second informant inheres in his statements against interest."

Similarly, Crockett's admission to McCarthy that he had committed the crime of arson was sufficient reason for crediting his information and supported a finding of reasonable cause for the eavesdropping, with or without the allegation that he had met with defendant 10 times. A common-sense reading of the petition discloses that a crime had been committed: Frank Crockett told Agent McCarthy that he (Crockett) and Roy Lewis set fire to defendant's houses for pay; that it was O'Dell's intent to collect the insurance money on the property; the East St. Louis Fire Department had a record of the explosion, indicating that the property was saturated with gasoline and that arson was the suspected cause. McCarthy acquired his information for the affidavit not as hearsay upon hearsay, but from a direct participant in the illegal activity who, under *Harris* and *Carmichael*, was a reliable informant. Clearly, McCarthy was entitled to rely on this firsthand observation by Crockett. In addition, however, Crockett's testimony at the trial—although obviously evasive—does support the allegation that he had met with defendant 10 times.

The record discloses the following colloquy on cross-examination:

"Q.: You deny telling Agent McCarthy that you had met Harry O'Dell ten times prior to the fire?

A.: I don't know what you mean by met, I don't understand the definition of that, if you mean be in his premises approximately ten times, I may have, yes sir."

Further, Crockett stated that when he testified before the grand jury that he had met defendant one time, he was referring to the taped conversation. The petition alleged that Crockett had discussed the arson several times, not that he had discussed it ten times with the defendant. This allegation is borne out by his testimony that he discussed the arson with Lewis at least twelve times, with defendant present during "a couple" of them.

We also note that the affidavit presented need not prove beyond a reasonable doubt that a crime has been committed nor even establish a *prima facie* case. The standard of probable cause as stated in *Spinelli v. United States* (1969), 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590, is "only the probability, and not a prima facie showing, of criminal activity * * *."

■ Defendant also complains that the authorization order did not terminate automatically when the conversation was recorded, but the petition failed to include a description of facts establishing reasonable cause to believe that additional conversations of the same type would occur thereafter. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—3(a)(3).) While the petition did not address the question directly, when read as a whole it does support reasonable cause to believe that more than one conversation might necessarily take place. The order expressly provided that authorization should not automatically terminate during the five-day period for which eavesdropping was authorized. In view of the nature of the investigation, we cannot say that there was not reasonable cause to believe more than one conversation about the arson might occur between Crockett and defendant. Furthermore, only one conversation was recorded; once it was recorded, no other monitoring took place. By comparison, in *People v. Childs* (1979), 67 Ill. App. 3d 473, 385 N.E.2d 147, the eavesdrop was sustained, although the authorization was much broader in scope than in the instant case, continuing for 10 days and with only the consenting party being named in the petition. Defendant here suggests no logical reason for suppression at trial, and we believe the recorded conversation was properly admitted into evidence.

The defendant also alleges that the trial court erred in failing to dismiss the count of the indictment charging defendant with arson. He asserts that an allegation that the property had a value in excess of $150 is an essential element of the charge of arson with the intent to defraud an insurer. We disagree.

Section 20—1 of the Criminal Code of 1961 provides as follows:
"A person commits arson when, by means of fire or explosive, he knowingly:
(a) Damages any real property, or any personal property having a value of $150 or more, of another without his consent; or
(b) With intent to defraud an insurer, damages any property or any personal property having a value of $150 or more." Ill. Rev. Stat. 1977, ch. 38, par. 20—1.

■■ Defendant concedes that an indictment for arson of real property under section 20—1(a) need not include an allegation of value, but argues that the differences in language between subsections (a) and (b) require an allegation of value under subsection (b), whether the property is real or personal. The language of subsection (b), standing alone, could conceivably support defendant's construction; however, it would make the distinction between "any property" and "any personal property," which is made in subsection (b), unnecessary, as all property would be subject to the value requirement. Both subsections (a) and (b) are written to cover arson of real property, with (b) covering arson of one's own property with intent to defraud an insurer, and (a) covering arson of property of another. Our supreme court has held that an indictment under subsection (a) is sufficient although it lacks an allegation of value. (*People v. Ross* (1968), 41 Ill. 2d 445, 447-48, 244 N.E.2d 608, 611-12, *cert. denied* (1969), 395 U.S. 920, 23 L. Ed. 2d 237, 89 S. Ct. 1771.) Further, there need be no proof that damaged real property had a value of $150 or more under subsection (a). (*People v. Johnson* (1974), 23 Ill. App. 3d 886, 894, 321 N.E.2d 38, 45.) It is apparent that subsection (b) is *in pari materia* with subsection (a), and that they are to be read and construed similarly. Therefore, the arson count of the indictment was not deficient, but amply met indictment requirements sufficient to enable defendant to prepare his defense and permit a conviction or acquittal to be pleaded in bar of a subsequent prosecution for the same offense. See *People v. Mahle* (1974), 57 Ill. 2d 279, 283, 312 N.E.2d 267, 270.

Defendant's final arguments question the scope of cross-examination permitted by the trial court, of both a prosecution and defense witness. He first contends that the court improperly limited defense counsel's attempt to cross-examine Frank Crockett as to the exact extent of the interest Crockett had in testifying for the State.

During cross-examination, Crockett testified that he had been convicted of car theft, armed robbery, burglary, and six counts of possession of stolen property. He was last sent to the penitentiary in December of 1976, but he explained that he had been transferred to St. Clair County in order to meet with law enforcement agents. Crockett was promised that the agencies involved would let the parole board know of

his cooperation in the instant case. He also understood that he would not be prosecuted for his role in the instant crimes.

When defense counsel went on to ask how many felonies Crockett had been "given a pass on" in return for his testimony, however, the court sustained the prosecutor's objection. When counsel questioned Crockett concerning purported home invasions in Kentucky after Crockett denied committing the offenses or being promised leniency for them, objections were again sustained. The court also instructed the jury to disregard a line of questioning concerning an invasion of the Wassell home in Caseyville, Illinois. Defendant now asserts that his cross-examination of Crockett was improperly restricted.

While wide latitude is allowed a defendant in cross-examining to establish the interest and bias of a witness, latitude has not been extended to cross-examination about uncharged crimes. (*People v. Olmos* (1978), 67 Ill. App. 3d 281, 292, 384 N.E.2d 853, 863.) The court may refuse to allow defense counsel to cross-examine a witness about prior arrests, since only pending charges are relevant to demonstrate that he might receive a benefit in exchange for his testimony. (*People v. Hardy* (1979), 70 Ill. App. 3d 351, 360, 387 N.E.2d 1042, 1050.) Furthermore, once the court has allowed cross-examination by defense counsel which reveals that an accomplice witness expects some form of leniency in return for his testimony, the court may restrict further examination as to the extent of that leniency. *People v. Clontz* (1975), 31 Ill. App. 3d 35, 37, 334 N.E.2d 317, 319; *People v. Lake* (1978), 61 Ill. App. 3d 428, 432, 378 N.E.2d 364, 367.

In this case, counsel fully developed the fact that Crockett had been granted immunity from prosecution for the arson. He showed that Crockett had been moved from the penitentiary, and that the parole board was made aware of Crockett's cooperation with the prosecution. He also revealed the extent of Crockett's record of prior convictions. All bias or interest possibly relevant to Crockett's testimony was thereby revealed, and the trial court properly limited further impeachment on those grounds. Any further cross-examination relating to home invasions in Kentucky would have been irrelevant, as there was no evidence that Kentucky ever gave Crockett immunity or that Illinois would have authority to give him immunity from prosecution for crimes committed in Kentucky.

Defendant's final challenge deals with the prosecutor's attempt to impeach Pansy O'Dell, who testified for defendant at trial. On September 20, 1977, following the eavesdrop authorization, when Frank Crockett first attempted to engage Harry O'Dell in conversation about the arson, Harry was not home. Crockett did speak with Pansy, defendant's wife, and he recorded his entire conversation with her. The State then applied

for, and received, an emergency authorization for the recording. Subsequently, the trial court granted Pansy's motion to suppress the recording. The contents of the recording clearly evidenced Pansy's guilty knowledge regarding the arson.

At the trial, on direct examination, Pansy testified to the seriousness of defendant's hearing impairment. On cross-examination, the prosecutor asked her if she had ever had any conversations with Frank Crockett about the fire and the payment to Roy Lewis. The court overruled the defendant's objection that the question was immaterial and beyond the scope of the direct testimony. When the prosecutor repeated the question, Mrs. O'Dell refused to answer it and stated that she did not understand what he was talking about. The prosecutor then asked her if she had talked to Frank Crockett in her apartment before he talked to defendant about the instant arson and the payment of money to Roy Lewis. She then refused to answer any questions or state her grounds for refusing, and the prosecutor terminated the cross-examination.

In chambers, defense counsel asked for a mistrial, arguing that the cross-examination both exceeded the scope of direct examination and raised a matter previously suppressed by the court. The court noted that its ruling suppressed only the recording, which would not destroy the witness' ability to testify at trial. The court overruled the motion for mistrial, but sustained the objection and admonished the jury:

> "The Court at this time wishes to instruct the jury to disregard questions asked of the witness Pansy O'Dell by the State's Attorney relative to possible conversations with the witness Crockett. The Court will sustain the objection of the defendant O'Dell's counsel to those questions. The answer will be stricken. The jury is instructed to disregard them."

On appeal, defendant argues that the cross-examination of Pansy O'Dell was beyond the scope of cross-examination and improperly drew the jury's attention to Pansy's guilty knowledge, as well as to the suppressed recording of her conversation with Frank Crockett.

The scope of cross-examination to show bias is very liberal. It is proper to inquire of a witness, in order to show his bias or prejudice, as to his relations with the defendant and his interest in the result of the suit. (*People v. Somerville* (1967), 88 Ill. App. 2d 212, 232 N.E.2d 115, *cert. denied* (1968), 393 U.S. 823, 21 L. Ed. 2d 94, 89 S. Ct. 81.) The latitude of cross-examination in this regard is controlled by the sound discretion of the trial court (*Somerville*, 88 Ill. App. 2d 212, 220, 232 N.E.2d 115, 119), and a court of review will interfere only in the case of a clear abuse of discretion resulting in manifest prejudice to defendant. (*People v. Jones* (1975), 60 Ill. 2d 300, 306, 325 N.E.2d 601, 604.) As a general rule, it is proper on cross-examination of a defense witness to question all matters

that explain, qualify, discredit or destroy his direct testimony, although they may incidentally constitute new matter which aids the cross-examiner's case. (*People v. Williams* (1977), 66 Ill. 2d 478, 486-87, 363 N.E.2d 801, 805; Gard, Illinois Evidence Manual R. 22:08 (1979).) The bias of a witness, whether favorable to or adverse to the defendant, is always pertinent on the question of the credibility of the witness. *People v. Henson* (1975), 32 Ill. App. 3d 717, 720, 336 N.E.2d 264, 266.

Involved in this case are the prejudices of Pansy O'Dell arising from her marital relationship with the defendant and her relationship with the case as a severed co-indictee. Wigmore has categorized these influences as "bias" and "interest":

> "*Bias*, in common acceptance, covers all varieties of hostility or prejudice against the opponent *personally* or of favor to the proponent personally.
>
> *Interest* signifies the specific inclination which is apt to be produced by the relation between the witness and the *cause at issue* in the litigation." 3A Wigmore, Evidence, §945 (Chadbourn rev. 1970).

In his cross-examination, the prosecutor attempted to show Mrs. O'Dell's interest in the case "over and above her wifely interests." Defendant cannot successfully argue that the cross-examination was beyond the scope of direct. While Mrs. O'Dell's direct testimony dealt only with her husband's hearing difficulties, his only defense rested on the claim that he was unable to hear or comprehend the nature of his incriminating taped conversation with Frank Crockett. Her testimony was critical to the defense. Thus, questions concerning her guilty knowledge might properly demonstrate personal interest in protecting defendant through her testimony about his hearing impairment. Such impeachment is a risk that the witness or his side takes. (*People v. Van Zile* (1977), 48 Ill. App. 3d 972, 977-78, 363 N.E.2d 429, 433; *People v. Sievers* (1978), 56 Ill. App. 3d 880, 884, 372 N.E.2d 705, 707-08.) It is apparent that when a co-indictee testifies for the accused, his own situation may be considered as tempting him to exonerate the other accused in order to help his own defense.

Furthermore, the fact that the cross-examination referred to Mrs. O'Dell's conversation with Frank Crockett, the recording of which was suppressed, does not necessarily result in error. Any prior statement which may show interest, bias, prejudice, or motive of a witness is a proper subject of cross-examination. (*People v. Lechner* (1965), 60 Ill. App. 2d 472, 475, 208 N.E.2d 898, 899.) In this case, Mrs. O'Dell's conversation with Crockett reveals her interest in the case. In the cross-examination the prosecutor did not refer to the recordings of conversations between Crockett and Mrs. O'Dell. As the trial court noted,

only the recordings, and not the conversations themselves, had been suppressed in connection with Mrs. O'Dell's indictment. Those conversations—as well as Crockett's testimony that he saw her leaving Lewis' home when he went there to get paid for the arson—clearly provided the prosecutor with a good-faith basis for impeaching Mrs. O'Dell as to her self-protective motive for testifying favorably on behalf of defendant. Defense counsel was obviously aware of the conversations, and in placing Mrs. O'Dell on the stand, knowingly took the risk that she would be impeached as to her guilty knowledge.

In addition, the recorded conversation was suppressed only as it related to Mrs. O'Dell's guilt, and not with regard to Harry's. Therefore, Harry had no special standing to challenge the conversation, and there was no necessity to exclude evidence against Mrs. O'Dell in order to protect his rights. *Alderman v. United States* (1969), 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961.

Finally, there is no evidence that the prosecutor improperly forced Mrs. O'Dell to assert her fifth amendment privilege against self-incrimination. There are two situations where it is reversible error for a prosecutor to force a witness to assert the privilege before a jury:

> (1) when the State makes a " 'conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege,' " or
>
> (2) where " 'a witness' refusal to answer add[ed] critical weight to the prosecution's case in a form not subject to cross-examination'."
> *People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362, 1365.

We have neither circumstance here. The prosecution's case was built entirely around the testimony of Frank Crockett, his taped conversation with the defendant, and the defendant's motive for arranging the arson. Against the defendant's claim that he had not heard the substance of the taped discussion, this evidence was overwhelming. The State did not attempt to build its case around cross-examination of Mrs. O'Dell, and her refusal to answer added little weight to the evidence of defendant's guilt already presented. This is particularly true since the trial judge admonished the jury to disregard her cross-examination, and any error was, at most, harmless.

We therefore find no reversible error in the prosecutor's cross-examination of Mrs. O'Dell.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.