THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
THOMAS D. HENDERSON, Defendant-Appellee.

Fourth District   No. 4—84—0256

Opinion filed December 13, 1984.—Rehearing denied January 29, 1985.

Neil F. Hartigan, Attorney General, of Springfield (James V. Cinotto and
Mark L. Rotert, Assistant Attorneys General, of counsel), for the People.

John H. Bisbee, of Law Offices of.John H. Bisbee, of Macomb, for appel-
lee.

JUSTICE MILLS delivered the opinion of the court:
This is an interlocutory appeal by the Attorney General, who asks
us to overturn an order of the circuit court suppressing the contents
of several tape recordings made pursuant to a one-party consent au-
thorization.
We agree that the suppression was improvidently allowed.
We reverse and remand.
On September 29, 1983, a Pike County grand jury returned a two-

count bill of indictment against defendant. Count I charged defendant with the unlawful delivery of cannabis in that on March 7, 1983, he knowingly and unlawfully delivered cannabis in the amount of more than 30 grams, but not more than 500 grams, in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1981, ch. 56½, par. 705(d)). Count II charged that defendant unlawfully possessed cannabis in that on March 7, 1983, he knowingly and unlawfully had in his possession more than 30 grams, but not more than 500 grams, of a substance containing cannabis, in violation of section 4(d) of the Act (Ill. Rev. Stat. 1981, ch. 56½, par. 704(d)).

The indictment was the result of an investigation begun in 1982 by William Rinehart, a special agent of the Illinois Division of Criminal Investigation (DCI). He was contacted by a person named Ron Dell. Dell told Rinehart that he had some information regarding John Lenerts and others which he wished to provide DCI in exchange for assistance in a prosecution which was proceeding against him in Adams County. As a result of the information given to DCI by Dell, a petition for an overhear was submitted on November 17, 1982. The period of the overhear was one day—November 17, 1982, from 1:30 p.m. to 11:59 p.m. Ron Dell was named as the consenting party, and a conversation between Dell and Lenerts was to be overheard.

On November 17, 1982, Dell and Lenerts met at the Ollie Pop Tavern in Quincy. They had a brief conversation which did not relate to a drug transaction. Dell mentioned defendant's name as they talked in the tavern, but did not indicate that he was in any way connected with drugs. Lenerts then told Dell to go to another tavern, at which time he would meet him. Dell left and was later met by Lenerts. Lenerts told him that he had just found out from his source that he could get 10 pounds of marijuana the next day. Lenerts also told Dell that the marijuana which he was going to supply was locally grown in a three-county area. He also indicated that the source of the marijuana lived 45 minutes from his home in Golden.

The agents knew that defendant was present at Ollie Pop's Tavern on the evening of November 17, 1982. They also knew that he lived in Pittsfield, which was a 45-minute drive from Lenerts' home in Golden, and that he owned farm real estate which was available for growing marijuana.

On November 19, 1982, Lenerts delivered cannabis to Ron Dell at the Pittsfield airport. During subsequent conversations, Lenerts told Dell that he could get more marijuana and cocaine, but the opportunity to make any additional deliveries evaporated when Dell left the area and moved to Florida.

In February 1983, Lenerts, during a meeting with DCI agents Michael Ernst and William Rinehart in a parking lot in Clayton, was advised that he had been under surveillance. The purpose of this meeting was to interrogate Lenerts concerning the prior delivery of cannabis to Dell. During this meeting, Lenerts was told by the agents that they knew that he had made a delivery of cannabis to Ron Dell on November 19, 1982. He was also informed that Dell had been wearing a wireless microphone during their previous meetings.

Lenerts told the agents that he would be willing to cooperate with the DCI in exchange for consideration on the drug charge. The agents told him that if he would cooperate, they would recommend to the State's Attorney that he not be prosecuted. Responding to further questions, Lenerts told the agents that he got the cannabis from Henderson. He described the delivery, including the fact that it was made at a law office maintained by the defendant, and that the marijuana was taken by the defendant from a large garbage bag apparently containing more cannabis and stored on the premises. He further stated that, to the best of his knowledge, attorney Henderson was not presently dealing in drugs because he had "cleaned up his act following a close call," but he qualified the statement by saying that he was not sure of this fact.

Based upon this information, agents Ernst and Rinehart went to Anthony Cameron, the Adams County State's Attorney. After hearing the information, Cameron advised the agents to seek further eavesdropping authority. He was told that the subject of further investigation would be the defendant, Thomas Henderson.

On March 4, 1983, Rinehart applied for an overhear in Adams County. The petition requested that Henderson be overheard, with Lenerts being a consenting party. The period of the overhear was from 12:01 a.m. March 7, 1983, to 11:59 p.m. March 15, 1983.

The petition which was presented to the court was accompanied by a two-page document detailing the transactions which led the agents to believe that Henderson was the source of Lenerts' marijuana. The petition was presented to a judge who had been actively involved in the Dell-Lenerts transactions and was familiar with the facts of the investigation.

The agents indicated that there were two goals of the March 4 application. The first was to engage the defendant attorney in conversations concerning the 1982 delivery of marijuana from Lenerts to Dell. The second goal was to determine whether Henderson was still dealing drugs. The agents informed the issuing judge of both these goals.

In addition to the written matters submitted with the application,

there was also oral discussion with the judge. Rinehart responded to the judge's questions, and also volunteered other general background information based on his personal knowledge of defendant and his location in Pike County. Rinehart also summarized what happened on November 17, 1982, when Lenerts and Dell met at Ollie Pop's Tavern.

The judge, after hearing this information, authorized the overhear. During the period authorized, seven tapes were generated. A return was made on March 16, 1983, at which time Rinehart and the judge listened to all the tapes.

After being indicted, the defendant moved to suppress the contents of any recordings of conversations between Lenerts and himself, pursuant to section 108A—9 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108A—9). After a full hearing on defendant's motion, the trial judge granted defendant's motion to suppress the contents of the overhears. The court found that the reliability of the confidential informant, John Lenerts, was not established and therefore the petition failed to establish reasonable cause for issuing the original authorization.

(A written order to this effect was filed on April 11, 1984, *nunc pro tunc* March 14, 1984. The State filed notice of intent to seek interlocutory appeal on April 6, 1984, and a certificate of substantial impairment was filed April 19, 1984.)

In this appeal, we are called upon to decide two issues. *First,* whether the trial court erred in ordering that the tape recordings be suppressed because the reliability of the State's consenting party was not established. The defendant has also raised an issue which was listed on his motion to suppress and which he feels is an alternate ground upon which the trial court order might be sustained. The *second* question is whether a delay of more than 90 days between the termination of the period of the order authorizing the overhear and the statutorily required notice of the existence of the overhear should result in the information being suppressed.

## I

In this appeal, both parties seem to agree that this court's decisions in *People v. Moore* (1980), 90 Ill. App. 3d 760, 413 N.E.2d 516, and *People v. Wassell* (1983), 119 Ill. App. 3d 15, 455 N.E.2d 1100, control the disposition of this question. While we agree that *Moore* and *Wassell* both present situations from which the contours of the structural analysis from which the reasonable cause required to issue an overhear may be gleaned, we find that neither are analogous to the extent necessary to dispose of this case. Rather, a case cited by

neither party but discovered through our own research is.

In *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 405 N.E.2d 809, a court was faced with a virtually identical situation to that before this court. In *O'Dell,* Special Agent Martin McCarthy petitioned for an order authorizing the use of an eavesdropping device. The petition was accompanied by a consent form, executed by Frank Crockett, and an executed authorization from the State's Attorney. To establish that a felony had been, was being, or was about to be committed, the petition asserted as follows:

> " 'Frank Eugene Crockett informed S/A Martin F. McCarthy that on July 16, he, along with Roy Lewis, set a gasoline-based fire and explosion at 1633 North 45th St., East St. Louis, Illinois. He said that he was paid to set afire both 1633 North 45th St. and 1637 North 45th St. by the owner of the properties, Harry O'Dell, of Belleville, Illinois. Crockett said that it was O'Dell's intent to collect the insurance money on the property. The East St. Louis Fire Department record of the explosion at 1633 North 45th indicated that they suspect arson as the cause. A fire department report also indicated that 1637 was saturated with gasoline at the time of the explosion, but that firemen were able to prevent its ignition. Crockett has met with O'Dell approximately ten (10) times in the past and he discussed the burning of the houses on No. 45th St. several times prior to the explosion.' " (84 Ill. App. 3d 359, 362-63, 405 N.E.2d 809, 813.)

The court noted that the petition specified the type of conversation involved, and the location from which it would be monitored. It also specified the defendant as the party whose conversations were to be overheard. The time frame was clearly established. No separate facts were alleged establishing reasonable cause to believe additional conversations would take place.

Based on the above information, the judge entered an order granting DCI authority to use an eavesdropping device, consistent with the provisions of the petition. On September 21, 1977, Frank Crockett engaged defendant in a recorded conversation at defendant's apartment, in which defendant acknowledged that he had arranged the arson of his properties. He was subsequently indicted for the instant offenses. On March 29, 1978, defendant moved to suppress the recorded conversation. No witnesses were called at the hearing on the motion which was denied on May 11, 1978.

Following his conviction, O'Dell appealed and asserted as one ground requiring reversal the fact that the overhear was not properly

supported by reasonable cause to believe that he had committed, was committing, or was about to commit a felony. The appellate court disagreed, noting that the informant (Crockett) told the affiant that he was personally involved in the arson, the occurrence of which defendant did not dispute. The court also noted that the Supreme Court has held that admissions of crime carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. (*United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075.) The same rule was again enunciated in the case of *United States v. Carmichael* (7th Cir., 1973), 489 F.2d 983, where a second informant's statements to the first informant—although hearsay upon hearsay—were held reliable as an exception to the hearsay rule because of the inherent reliability of statements against interest.

The *O'Dell* court concluded that Crockett's admissions to McCarthy that he had committed the crime of arson was sufficient reason for crediting his information and supported a finding of reasonable cause for the eavesdropping. The court stated:

"A common-sense reading of the petition discloses that a crime had been committed: Frank Crockett told Agent McCarthy that he (Crockett) and Roy Lewis set fire to defendant's houses for pay; that it was O'Dell's intent to collect the insurance money on the property; the East St. Louis Fire Department had a record of the explosion, indicating that the property was saturated with gasoline and that arson was the suspected cause. McCarthy acquired his information for the affidavit not as hearsay upon hearsay, but from a direct participant in the illegal activity who, under *Harris* and *Carmichael,* was a reliable informant. Clearly, McCarthy was entitled to rely on this firsthand observation by Crockett." 84 Ill. App. 3d 359, 367, 405 N.E.2d 809, 816-17.

Turning to the case *sub judice,* we find ourselves confronted with nearly the same situation. Lenerts admitted to Rinehart and Ernst that he delivered marijuana to Ron Dell. The agents in fact knew that Lenerts had personally participated in this crime, as they were listening to the transaction as it occurred between Lenerts and Dell. At the time of the delivery, Dell was acting as an undercover agent for the police. Upon being confronted with the information, Lenerts did not attempt to evade the issue, but rather admitted it. Under these circumstances, we find that his reliability was established. Since the reliability of the consenting party was properly established in this case, we find that the circuit court erred in suppressing the contents of the tape recorders which were generated based on

the consenting parties' information. *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 405 N.E.2d 809.

## II

The second issue which we must discuss is whether a delay of more than 90 days between termination of the period of the overhear and notification of the subject of the overhear of its existence should result in the information elicited being suppressed.

We hold that it should not.

█ The issue requires construction of section 108A—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108A—8). That section provides in pertinent part:

> "Within a reasonable time, but not later than 90 days after either the filing of an application for an order of authorization or approval which is denied or not later than 90 days after the termination of the period of an order or extension thereof, the issuing or denying judge shall cause to be served on the persons named in the order or application *** a notice of the transaction involving any requested or completed use of an eavesdropping device ***."

Here, the order authorizing the use of the eavesdropping device covered the period from 12:01 a.m. on March 7, 1983, to 11:59 p.m. on March 15, 1983. File folders from the two cases reveal that Rinehart reported back to the judge on October 24, 1983, in case No. 83—MR—68 (Adams County), and on April 12, 1983, in case No. 83—MR—39 (Adams County). The statutorily required notice in No. 83—MR—68 was filed October 24, 1983, while the notice in No. 83—MR—39 (dated April 12, 1983) was filed June 24, 1983. In both cases, it is clear that the notice which defendant received was outside the 90-day requirement of the statute. The question then becomes whether the violation of the 90-day requirement calls for the suppression of the fruits of the overhear. In our view, it does not.

In *People v. Nieves* (1982), 92 Ill. 2d 452, 442 N.E.2d 228, our supreme court, in construing the sister statute of section 108A—8, held that technical violations of these statutes do not *per se* require the suppression of the fruits thereof. In *Nieves,* the supreme court held that tape recordings were properly admitted at trial even though one requirement of the statute had been violated by 16 days. While *Nieves* specifically involved the immediacy requirement of section 108A—7(b) and this case involves the notice requirement of 108A—8(a), it seems clear that *Nieves* and the reasoning therein is applicable to the instant case. This is important because the supreme court in *Nieves* specifi-

cally cited Federal courts as sources of interpretation of similarly worded statutes in Illinois.

Examining the Federal cases construing the portion of the statute similar to that questioned here, we note that in *United States v. Cafero* (3d Cir. 1973), 473 F.2d 489, the Third Circuit addressed the question of whether defective notice constituted proper grounds for suppression. It held that it did not. The *Cafero* court likened the notice requirements to technical procedural requirements in the context of a traditional search warrant. The failure to deliver a copy of the warrant to the party whose premises are searched, a delay in the execution of the warrant, or a mistake in the return of inventory do not generally require suppression of items seized. The court concluded that in the context of electronic surveillance, service of defective statutory notice should also not be sufficient grounds to require suppression.

Since it seems clear that our supreme court is willing to adopt Federal cases construing similar statutes in this particular area of the law, we hold that the violation of the 90-day notice statute does not require suppression of the contents of the tapes in this case.

Reversed and remanded.

GREEN, P.J., and TRAPP, J., concur.