THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAVERTIS STEWART, Defendant-Appellant.

Second District   No. 2—85—0427

Opinion filed September 28, 1987.

G. Joseph Weller and Michael F. Braun, both of State Appellate Defender's Office, of Elgin, and Peter B. Nolte, of Sreenan & Cain, P.C., of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Lavertis Stewart, was convicted by a jury of murder, attempted murder and armed robbery. He was sentenced to a 75-year term of imprisonment on the murder conviction and a concurrent 30-year term of imprisonment on the attempted murder conviction. No sentence was imposed on the armed robbery conviction. This case stems from an incident that occurred at the Rainbow Tap in Rockford in August 1983. Two other individuals were convicted as a result of this incident, and their appeals have already been decided by this court. (See *People v. Flint* (1986), 141 Ill. App. 3d 724, 490 N.E.2d 1025; *People v. Richardson* (1985), 139 Ill. App. 3d 598, 487 N.E.2d 716.) On appeal, defendant raises three issues for our review: (1) whether the shackling of defendant's ankles during trial and placing defendant in an isolation cell during the overnight recesses between trial days deprived him of a fair trial; (2) whether the State's application for use of an eavesdropping device was supported by reasonable cause; and (3) whether the jury was improperly instructed on attempted murder. As the defendant has not challenged the sufficiency of the evidence against him, we include only those facts necessary to resolve the issues raised.

I

■■ Defendant's initial argument attacks the restraints placed on him during the course of trial. Defendant first contends the shackling of his ankles was unnecessary, and the court failed to conduct the proper inquiry in determining whether shackles were necessary as provided in *People v. Boose* (1977), 66 Ill. 2d 261, 266-67, 362 N.E.2d 303. The State responds there was sufficient justification for the security measures, and the court considered many of the pertinent factors to be weighed in determining whether shackling was appropriate. The State further asserts since the jury was unaware of the shackles, the defendant has failed to demonstrate any prejudice, and any error that may have occurred was harmless.

Prior to trial, the judge advised counsel he had received a letter from the sheriff's department recounting that defendant had stated he would not be taken out of the courtroom alive. Based on this information, the sheriff's department requested tighter security at

trial and permission to place some form of physical restraints on the defendant during the trial. Defendant's primary objection concerned the impact the shackling would have on the jury. The court assured defendant that any restraints used would be shielded from the jury's view. During trial, defendant's ankles were shackled, and efforts were undertaken to prevent the jury from viewing the restraints. There is no indication in the record, and defendant does not claim, the jury was apprised of the ankle shackles used on defendant or the shackles precluded defendant from assisting counsel in his defense. We find these factors dispositive of defendant's claim.

Absent a showing of prejudice, defendant's argument is unpersuasive. The reluctance of courts to sanction the shackling of a defendant during court proceedings, except when there is a manifest necessity, arises because shackling has a tendency to prejudice the jury; it restricts the defendant's ability to assist counsel; and it is viewed as an affront to the dignity of the judicial process. (*People v. Boose* (1977), 66 Ill. 2d 261, 265, 362 N.E.2d 303.) In *Boose* and *People v. Brown* (1977), 45 Ill. App. 3d 24, 358 N.E.2d 1362, the cases relied on by defendant, the jury was made aware of the restraints placed on defendant. Prejudice was thereby shown, and the courts' inquiries revolved around the propriety of the shackling. The standard of review was set forth in *Boose* as follows: "whether the trial court abused its discretion in requiring the defendant to appear shackled before the jury." (*People v. Boose* (1977), 66 Ill. 2d 261, 267, 362 N.E.2d 303.) Here, we need not reach the question of the propriety of the shackling, because there is no indication in the record defendant appeared shackled before the jury or that the jury was aware defendant's ankles were shackled. In addition, there is no indication the ankle shackles prevented defendant from consulting with counsel. Finally, shielded ankle shackles are far less of an affront to the dignity of the judicial process than, for example, the binding and gagging of a defendant. In sum, we find no reversible error arising from the ankle shackling of defendant.

■ Defendant also contends his placement in an isolation cell during the overnight recesses of his trial deprived him of his sixth amendment right to counsel (U.S. Const., amend. VI) and affected his ability to concentrate and assist in his defense. Defendant was placed in isolation for observation purposes based on the sheriff department's fear that defendant was going to harm himself on account of his statement that he would not be taken from the courtroom alive. The solitary cell housing defendant contained an overhanging light that remained lit at all times and was located in

an area that was noisy throughout the night. While in isolation, defendant did not have access to a telephone. On at least three occasions during trial, defendant requested to be transferred back to the jail's general population. Defendant complained of fatigue, the lack of a mattress cover and the fact he was not allowed to smoke cigarettes. There is no indication that defendant desired, attempted or was prevented from consulting with counsel while he was in isolation.

In support of his sixth amendment claim, defendant relies on *Geders v. United States* (1976), 425 U.S. 80, 47 L. Ed. 2d 592, 96 S. Ct. 1330, and *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96. Both *Geders* and *Noble* held that a defendant's right to the assistance of counsel is violated by a trial court order precluding defendant from consulting with his attorney during an overnight recess between defendant's direct and cross-examination. Defendant's reliance on these cases is misplaced. Here, the trial court did not preclude defendant from consulting with counsel during the overnight recesses. Moreover, there is no suggestion in the record that defendant desired, attempted, or was prevented from contacting counsel by the authorities at the jail. Under these circumstances, defendant's sixth amendment claim must fail because there is no showing defendant was deprived of his right to the assistance of counsel. See *People v. Brooks* (1987), 115 Ill. 2d 510, 520-21, 505 N.E.2d 336.

Defendant also asserts the conditions of the isolation cell affected his ability to concentrate and assist in his defense. This contention is unsupported by any legal authority and is belied by the record. After the second and third days of trial, the trial judge stated, in response to defendant's objections to the isolation cell, that defendant was attentive throughout the proceedings. The court noted defendant was conversing with his attorney and reading through transcripts and reports. In addition, after the fourth day of trial the director of operations at the jail notified the court in chambers that he had personally checked on defendant's condition that morning, and defendant had slept better the previous night, he had showered, and arrangements were being made for him to smoke and get dressed for trial. In view of the absence of any support in the record for defendant's claim, and the complete lack of authority in support thereof, defendant's argument on this matter must be rejected.

## II

Defendant next contends the court order authorizing use

of an eavesdropping device was improperly granted because reasonable cause did not exist to believe defendant had committed a felony or that conversations concerning the felony would be obtained. On October 4, 1984, Rockford police officer Dominic Iasparro presented to Chief Judge Harris H. Agnew of the 17th Judicial Circuit an application for an order authorizing use of an eavesdropping device. The application recited Iasparro's belief that authorization to use an eavesdropping device should issue for purposes of overhearing conversations between the defendant and Bryan Troupe, based on the information contained in the attached affidavits of Iasparro and Troupe. In his affidavit, Iasparro recounted that on August 28, 1983, an armed robbery and shooting occurred at the Rainbow Tap in Rockford. A bartender was shot to death and an off-duty policeman was wounded. After a police investigation, Charles Richardson and Eugene Flint were arrested. Richardson had been tried and convicted of murder and armed robbery. At his trial he was identified as one of the gunmen by the wounded off-duty police officer. Flint had yet to stand trial. The affidavit further stated that Bryan Troupe had recently been charged with robbery. During an interview with Rockford detectives, Troupe stated he had information pertaining to the shooting at the Rainbow Tap. Troupe told the detectives that about two or three weeks after the shooting defendant had told Troupe in great detail that he was one of the gunmen in the tavern and how the shooting and robbery occurred. Iasparro's affidavit concluded that, based on the detail provided by Troupe, Iasparro believed Troupe was telling the truth about the statements made by defendant.

Bryan Troupe's affidavit included the following information. Troupe was a friend of the defendant. In September 1983, Troupe had a conversation with defendant inside a car in the driveway of his home in which defendant related he was one of the two gunmen who went into the Rainbow Tap. Defendant told Troupe he was wearing a mask and was the person who shot the bartender and the other person. Troupe's affidavit further stated that during the past year he and defendant had conversed on several occasions, including as recently as the previous weekend. On one other occasion, shortly after the conversation in the driveway, defendant raised the subject of the shooting; however, Troupe curtailed the conversation because another person was in a nearby room of the house. The affidavit lastly averred Troupe's belief that because he knew defendant so well, and because defendant had previously described in detail his involvement in the incident at the Rainbow Tap, defendant would

again be willing to talk to Troupe about the incident if Troupe asked him.

Section 108A—4 of the Code of Criminal Procedure of 1963 provides in pertinent part:

"The judge may authorize or approve the use of an eavesdropping device where it is found that:

\*\*\*

(b) there is reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony under Illinois law; [and]

(c) there is reasonable cause for believing that particular conversations concerning that felony offense will be obtained through such use \*\*\*." (Ill. Rev. Stat. 1985, ch. 38, pars. 108A—4(b), (c).)

Reasonable cause exists when the totality of the facts and circumstances asserted is sufficient to warrant the belief by a reasonable person that the aforementioned statutory requirements have been satisfied. (*People v. Hammer* (1984), 128 Ill. App. 3d 735, 737, 471 N.E.2d 615.) In determining whether reasonable cause is present, courts should view the application for an eavesdropping order in a commonsense fashion. (*People v. Pitchford* (1983), 115 Ill. App. 3d 164, 167, 450 N.E.2d 349.) Neither proof beyond a reasonable doubt that defendant committed a crime nor even a *prima facie* case need be established; rather, only a probability of criminal activity need be shown. (*People v. Ellis* (1984), 122 Ill. App. 3d 900, 902, 461 N.E.2d 646.) The issuing judge's conclusions regarding the existence of reasonable cause are to be accorded great deference by subsequent judges reviewing his actions. 122 Ill. App. 3d 900, 903, 461 N.E.2d 646.

Defendant's argument that reasonable cause to issue the eavesdropping device was absent focuses on the lack of corroboration for Troupe's allegations and the purported inherent unreliability of Troupe's statements. Although defendant accurately points out that Troupe's averments were uncorroborated by other affidavits (*People v. Hammer* (1984), 128 Ill. App. 3d 735, 471 N.E.2d 615), or by his participation in the offense (*People v. Henderson* (1984), 129 Ill. App. 3d 611, 472 N.E.2d 1147), we do not agree with defendant that the lack of these corroborating factors negates the trial court's finding of reasonable cause. Each judicial determination of whether reasonable cause exists necessarily depends on the particular facts of the case. Here, the salient facts presented to the issuing judge included Troupe's averments that defendant had made incriminating

statements about the robbery and shooting incident at the Rainbow Tap. Specifically, defendant purportedly admitted to Troupe he was one of the gunmen involved, he wore a mask, and he shot the bartender and off-duty police officer. The application further revealed Troupe was a friend of defendant and conversed with him frequently. Finally, Troupe believed defendant would talk about the incident again if Troupe questioned him about it.

■ In our opinion, Troupe's detailed averments of defendant's incriminating statements concerning a serious crime that had already been committed, and Troupe's averment that he believed defendant would speak to him again about the incident, provided a sufficient basis for the issuing judge to authorize the use of an eavesdropping device. (See People v. Pitchford (1983), 115 Ill. App. 3d 164, 168-69, 450 N.E.2d 349 (eavesdropping order based in part on informant's statement concerning defendant's incriminating statements properly granted); People v. Woods (1984), 122 Ill. App. 3d 176, 181, 460 N.E.2d 880 (eavesdropping application grounded on hearsay held sufficient based in part on informant's detailed declaration).) Common sense dictates the eavesdropping order be issued in the present case.

Defendant also claims Troupe's inherent unreliability precluded a finding of reasonable cause. Defendant bases this contention on the fact that Troupe approached police with the information implicating defendant only after he was charged with robbery. We find defendant's claim unpersuasive. Reliability is a question of credibility and typically affects the weight of the information given. The issuing judge was presented with a detailed affidavit provided by Troupe and an affidavit of a police officer indicating the officer believed Troupe was telling the truth. Furthermore, the record indicates the officer and Troupe were present when the application was presented to Judge Agnew. In view of these factors, we do not believe the circumstances surrounding Troupe's revelations precluded a reasonable cause finding. We find support for our conclusion in People v. Sylvester (1980), 86 Ill. App. 3d 186, 195, 407 N.E.2d 1002, where it was held the reliability of a source providing hearsay statements is not a requirement mandated by the eavesdropping statute.

■ Defendant also complains the pertinent information provided to Troupe by defendant was over a year old, and there was no showing defendant would suddenly, one year later, talk to Troupe about the incident. Once again, we must disagree with defendant. Troupe and defendant conversed frequently. During two conversations shortly after the crime, defendant mentioned his involvement

in the offense. On the second occasion, Troupe curtailed defendant from discussing the incident on account of Troupe's fear the conversation would be overheard. It is manifest that defendant was willing to discuss his involvement in the incident with Troupe. It follows that defendant would probably be willing to talk about the matter if he were asked. Troupe believed this to be the case, and we see no reason for the issuing judge to disregard this belief. Because a felon's guilty knowledge is usually retained, whether or not it will surface in conversation is not particularly dependent on time considerations. (*People v. O'Dell* (1980), 84 Ill. App. 3d 359, 364, 405 N.E.2d 809.) In light of Troupe's friendship and frequent contact with defendant, and the circumstances surrounding their previous conversations about defendant's participation in the incident at the Rainbow Tap, we do not believe the one-year interval adversely affected the finding of reasonable cause.

### III

■■■■ Defendant's final argument challenges the propriety of the jury instructions on attempted murder. Defendant contends the instructions given were improper because the issues instruction on attempted murder failed to include the element of specific intent. The State alternatively asserts this contention was waived, there was no error in the instructions, and if there was error it was harmless. We agree with the State that this issue was waived, and there was no error in the instructions tendered.

It is axiomatic that attempted murder requires a specific intent to commit the offense of murder. (*People v. Trinkle* (1977), 68 Ill. 2d 198, 202, 369 N.E.2d 888.) Murder, on the other hand, can be committed with the intent to kill or do great bodily harm, with knowledge that acts create a strong probability of death or great bodily harm, or while attempting or committing a forcible felony. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a); *People v. Harris* (1978), 72 Ill. 2d 16, 23-24, 377 N.E.2d 28.) As a result of the different elements accompanying attempted murder and murder, attempted murder instructions "must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown." 72 Ill. 2d 16, 27, 377 N.E.2d 28.

In *Harris*, our supreme court addressed the consolidated appeals of two defendants charged with attempted murder. In both cases, the jury was given an attempted murder definition instruction providing:

" 'A person commits the crime of attempt who, with the in-

tent to commit the crime of murder, does any act which constitutes a substantial step toward the commission of the crime of murder. The crime attempted need not have been committed.' " (72 Ill. 2d 16, 20, 377 N.E.2d 28.)

In addition, attempted murder issues instructions providing as follows were given:

" 'To sustain the charge of attempt, the State must prove the following propositions:

*First*: That the defendant performed an act which constituted a substantial step toward the commission of the crime of murder; and

*Second:* That the defendant did so with intent to commit the crime of murder.' " (72 Ill. 2d 16, 20, 377 N.E.2d 28.)

Finally, an instruction defining murder was tendered to each jury. The murder instructions differed in that one case relied on section 9—1(a)(1) of the murder statute—intent to kill or do great bodily harm—and the other was predicated on section 9—1(a)(2)—knows such acts create a strong probability of death or great bodily harm to that individual. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a).) The supreme court found the instructions improper because they permitted the jury to return a verdict of guilty of attempted murder without finding the defendant had a specific intent to kill. *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28; *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888; *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903.

In the present case, the pertinent instructions tendered by the prosecution on the charges of the murder of Donald Parker and the attempted murder of Douglas Block provided in relevant part:

"A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual or another; or he is committing the offense of armed robbery." Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1981) (hereinafter cited as IPI Criminal 2d); People's instruction No. 15.

"To sustain the charge of murder, the State must prove the following propositions:

First: That the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Donald Parker; and

Second: That when the defendant, or one for whose conduct he is legally responsible, did so, he intended to kill or do

great bodily harm to Donald Parker or he was committing the offense of armed robbery." IPI Criminal 2d No. 7.02; People's instruction No. 16.

"A person commits the offense of attempt when he, with the intent to commit the offense of murder *and with the intent to kill*, does any act which constitutes a substantial step toward the commission of the offense of murder.

The offense attempted need not have been committed." (Emphasis added.) IPI Criminal 2d No. 6.05 (modified); People's instruction No. 19.

"To sustain the charge of attempt, the State must prove the following propositions:

First: That the Defendant performed an act which constituted a substantial step toward the commission of the offense of the murder of Douglas Block; and

Second: That the Defendant did so with the intent to commit the offense of murder of Douglas Block." IPI Criminal 2d No. 6.07; People's instruction No. 20A.

The State contends defendant has waived his challenge to the attempted murder instructions by failing to specifically object to the defect he is now asserting on review. At the jury instruction conference, defense counsel objected to the phrasing of the attempted murder definition instruction (People's instruction No. 19), requesting the clause "and with the intent to kill" be removed. The court responded, "If it is out, then we go back to the definition of murder and we got the great bodily harm that the jury could find—." Counsel then stated he did not like the way the instruction was phrased and requested the intent to commit murder clause and the intent to kill clause be switched. This request was denied. Defendant also objected to the State's inclusion of an accountability clause in the proposed attempted murder issues instruction. (People's instruction No. 20). Defendant withdrew this objection when the court agreed to excise the accountability clause. After a lunchtime recess, the State submitted a modified issues instruction on attempted murder consistent with the court's previous rulings. Defendant entered a general objection. In paragraph 36 of his post-trial motion, defendant alleged the court "erred in allowing and giving improper and inadequate instructions, specifically but not limited to *** (b) over defense objections State 8, 14, 16, 17, 18A, 19, 20A." At the hearing on the post-trial motion, counsel's comment on the claim of improper jury instructions was limited to, "I objected to several of the State's instructions. The court ruled on those objections. I stick by them and

I believe they should not have been allowed to go to the jury." In denying the motion, the court stated the claimed errors in the jury instructions were all ruled on at the instruction conference.

■■ The record reveals defendant acquiesced to the error he now complains of. (*People v. Rachel* (1984), 123 Ill. App. 3d 600, 606, 462 N.E.2d 959.) When the attempted murder definition instruction was tendered by the State, defendant requested the intent to kill clause be eliminated. The court's response in denying defendant's request, quoted above, indicates the court was cognizant the instructions on attempted murder should contain a reference to the specific intent to kill in order to avoid misinstructing the jury. Counsel did not respond directly to the court's comment; rather, he countered by requesting the intent to commit murder clause and the intent to kill clause be switched. Counsel's response to the court's learned comment, his failure to make any further comment or objection relative to the argument raised on appeal, and his failure to tender any alternative instructions curing the error he now complains of demonstrate defendant's acquiescence to the instructions tendered to the jury. Defendant's general objections to the instructions at trial, in his post-trial motion and at the post-trial motion hearing failed to preserve the issue raised on appeal because specific objections are necessary to preserve an instruction issue for review. *People v. McClure* (1979), 80 Ill. App. 3d 10, 16-17, 398 N.E.2d 1233.

■■ While the failure to make an objection at trial to an error in jury instructions waives the issue for appeal in most cases, the waiver rule is not absolute. (*People v. Roberts* (1979), 75 Ill. 2d 1, 10, 387 N.E.2d 331.) Supreme Court Rule 451(c), which addresses the tendering, giving and settling of instructions in criminal cases, provides in pertinent part:

> "[B]ut substantial defects are not waived by failure to make timely objections thereto if the interests of justice require."
> (107 Ill. 2d R. 451(c).)

Rule 451(c) provides a limited exception to the waiver rule and is only "to be used to correct 'grave errors' [citation], or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed [citation]." (*People v. Roberts* (1979), 75 Ill. 2d 1, 14, 387 N.E.2d 331.) In *Roberts*, the supreme court was confronted with the attempted murder instructions found to be improper in *Harris*. The supreme court recognized the error, but noted that defendant had not objected to the instructions at trial and had failed to preserve the issue in his post-trial motion. Apply-

ing Rule 451(c), the court concluded the improper attempted murder instructions did not constitute "grave error," and the evidence was not closely balanced; therefore, the issue was waived. 75 Ill. 2d 1, 14-15, 387 N.E.2d 331.

▇▇ Here, we do not believe there was error, grave or otherwise, in the instructions on attempted murder tendered to the jury. Defendant, relying on *Harris, Trinkle,* and *Viser,* contends the instructions given below failed to make it clear to the jury that a finding of a criminal intent to kill was a necessary predicate to entering a guilty verdict on the attempted murder charge. The cases relied on by defendant are distinguishable because the attempted murder definition instruction given below included an intent to kill clause. The insertion of this clause, which modified the IPI definition instruction on attempted murder (IPI Criminal 2d No. 6.05), advised the jury of the specific intent that must be present in order for a person to commit attempted murder. In the cases relied on by defendant, no reference to the requisite mental state for attempted murder was contained in the jury instructions. Additionally, though of less importance, in the present case the defendant was also charged with the murder of Donald Parker. Murder definition and issues instructions were tendered to the jury along with the attempted murder instructions. In both issues instructions specific reference was made to the names of the respective victims. We believe the instructions, when read as a whole, prevented the jury from finding the defendant guilty of attempted murder without first determining he possessed the specific intent to kill. "To assess the propriety of a particular jury instruction, it must be viewed in conjunction with all of the instructions given. It is sufficient if the series of instruction, taken as a whole, fully and fairly announce the applicable law." (*People v. Hartfield* (1985), 137 Ill. App. 3d 679, 689, 484 N.E.2d 1136.) This standard was satisfied here.

Support for our conclusion is found in *People v. Graham* (1985), 132 Ill. App. 3d 673, 477 N.E.2d 1342. In *Graham,* as in this case, defendant was charged with murder, attempted murder and armed robbery. The jury was instructed, in pertinent part, on the definition of murder based on intent to kill or while in the course of a felony; the IPI definition instruction for attempted murder (which does include an intent to kill clause); and the issues instruction for attempted murder with the name of the victim mentioned and the following clause inserted:

> "THIRD: That at the time the defendant or one for whose conduct he is responsible, performed this act he intended to

kill Patrick White."

After distinguishing *Harris* and *Viser*, the court found while the definition instruction on attempted murder required only an intent to commit murder, the issues instruction provided the State must prove, *inter alia*, that defendant intended to kill the victim. The court concluded the instructions, when viewed *in toto*, did not mislead the jury on the intent requirements for attempted murder. (132 Ill. App. 3d 673, 682-83, 477 N.E.2d 1342.) A similar situation exists here—the attempted murder definition instruction included a reference to the specific intent element while the attempted murder issues instruction did not.

Having found that defendant failed to properly preserve this issue for review, and there was no error, grave or otherwise, we lastly note that the evidence supporting the attempted murder charge was not closely balanced. At trial, Douglas Block, the off-duty police officer wounded in the attack, testified that as he was falling down feigning unconsciousness, one of the gunmen stuck a gun in his ribs and shot him. Bryan Troupe testified that three weeks after the incident defendant told Troupe he was one of the perpetrators, and he had shot the bartender and the patron. Troupe also testified that defendant later recounted these admissions during a conversation between them recorded by police. A tape recording of defendant's admissions was played before the jury. In our view this evidence precludes a finding that the evidence was closely balanced.

In sum, although the instructions tendered to the jury on the attempted murder charge could have been clearer, we believe the instructions were sufficient to avoid misleading the jury. In any case, defendant's argument is waived because it was not specifically raised in the trial court, no grave error was involved, and the evidence was not closely balanced.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HOPF and NASH, JJ., concur.