No. 2--96--0249          

     

______________________________________________________________________________

                                     

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court 

OF ILLINOIS,                    )  of Du Page County.

                                )

     Plaintiff-Appellee,             )

                                )

v.                              )  No. 94--CF--644

                                )    

ANTHONY GRANO,                  )  Honorable

                                )  Thomas E. Callum,

     Defendant-Appellant.            )  Judge, Presiding.

_______________________________________________________________________________

     JUSTICE THOMAS delivered the opinion of the court:

     Following a jury trial in the circuit court of Du Page County, the

defendant, Anthony Grano, was convicted of criminal sexual assault (720 ILCS

5/12--13(a)(4) (West 1994)).  The defendant was sentenced to four years in

prison.  We reverse and remand for a new trial.   

                                   FACTS

     The facts relevant to our decision are as follows.  At the January 1996

trial, 17-year-old K.M. testified that she first met the defendant when she

joined his karate school, the Grano Karate School, at the age of six.  The 40-

year-old defendant was the owner of and head instructor at the karate school. 

The defendant was K.M.'s "sensai," her teacher.  K.M. became an instructor at the

karate school in 1993.  Late in 1993 and early in 1994, she was at the karate

school three to five times per week.  On Tuesdays and Fridays, she was at the

school by 4 or 5 p.m.  On Wednesdays, she was there by 7:30 p.m.  

     K.M. further testified that the defendant initiated a physical relationship

with her during the summer of 1993.  The first instance occurred when the

defendant drove K.M. home from the karate school.  While parked in K.M.'s

driveway, the defendant leaned over and French-kissed K.M.  From that time

forward, the kissing incidents became more passionate, occurring in the

defendant's car, in his office at the karate school, and at K.M.'s house when her

parents were away.  On one occasion, the defendant kissed K.M. while they were

in his office at the karate school.  Because K.M.'s cousin, Jeff Gardner, was at

the school at that time, the defendant locked the door to the office.  On another

occasion, the defendant kissed K.M. at her house while K.M.'s friend, Tina

O'Nash, was in the next room.  When O'Nash stepped outside to have a cigarette,

the defendant locked the front door.  He and K.M. then engaged in kissing and

fondling one another.  The defendant fondled K.M.'s breasts both outside and

underneath her shirt.  On yet another occasion, the defendant and K.M. were in

the defendant's office at the karate school.  K.M. was sitting on the desk while

the defendant was standing between her legs.  The defendant had unbuttoned a few

buttons on her shirt, and they were kissing.  The door suddenly opened, and

Anthony Passo, another student at the school, walked in.  The defendant jumped

back from K.M. and pretended there was something in her eye.          

     In addition to these incidents, K.M. testified that she and the defendant

engaged in dry sex and that she had given him a hand job to the point of

ejaculation while in his office.  When she and the defendant would go out for

dinner with others from the karate school, they would sit next to one another and

the defendant would place his jacket over his lap and their hands.  They would

rest their hands on each others' knees and the defendant would move her hand

toward his groin area.  

     K.M. testified that in August 1993, the defendant drove K.M. and two other

students, 23-year-old D.J. and 15-year-old Tara Romanow, to a karate tournament

in Tennessee.  During the ride, the defendant engaged K.M. in a graphic sexual

conversation.

     According to K.M., in February 1994, she and the defendant were kissing in

his office at the karate school.  He was sitting on his desk and she was standing

between his legs.  The defendant then stuck his hand down her pants and

penetrated her vagina with his finger.  K.M. was 15 years old at the time.  K.M.

testified that they never engaged in oral sex.  She also testified that they

never engaged in sexual intercourse, although the defendant had made arrangements

to do so at a local hotel.  She stated that he called her at home to discuss the

arrangements one time when her friend, Kim McCullough, was there.  She asked

McCullough to pick up another extension and listen to their conversation.  In

February 1994, they both went to the hotel along with a group of karate students,

but did not engage in sexual intercourse.  That month, K.M. stopped attending the

karate school.  

     K.M. testified that she eventually told her aunt what had been going on

between her and the defendant.  K.M. agreed to allow an investigator from the Du

Page County Children's Center to tape phone conversations between her and the

defendant on March 11 and March 14, 1994.  The tapes were introduced at trial and

admitted into evidence.

     Anthony Passo testified that he was a student at the Grano Karate School. 

On one occasion, he opened the closed door to the defendant's office and walked

in.  He observed that K.M. was sitting on the desk and the defendant was standing

close to her between her legs.  K.M.'s shirt was partially unbuttoned and her

makeup was smeared.  Passo also testified that he saw the defendant place his

hand on K.M.'s leg while seated at a table when the class went out for dinner.

     Kim McCullough testified that she was a student at the Grano Karate School. 

On February 10, 1994, she was at K.M.'s house; at K.M.'s request, she listened

in on a phone conversation between K.M. and the defendant about sex.  She stated

that she had seen the defendant place his hand on K.M.'s lap frequently while

seated at a table when the class went out to dinner.  McCullough also testified

that she saw K.M. go into the defendant's office alone quite a few times.  They

would shut the door.  Once, she saw K.M. leave the office with her shirt

unbuttoned and untucked.  K.M. immediately went to reapply her makeup in the

bathroom. 

     Tina O'Nash, a friend of K.M.'s, testified that she was at K.M.'s house in

January 1994.  The defendant stopped over.  O'Nash heard K.M. and the defendant

kissing and moving around on the plastic covered couches in the family room.  She

observed that K.M. and the defendant were alone five or six times in the

defendant's office sometimes with the door locked.  She also observed the

defendant rub K.M.'s leg while seated at a table when they all went out to eat

at a local restaurant.  

     At trial, Tara Romanow testified that the defendant drove her to a karate

tournament in the summer of 1993, along with K.M. and D.J.  She stated that the

defendant engaged them in a graphic conversation about sex and asked them not to

tell anyone about their conversation, especially his kids.  When the class went

out to eat at a local restaurant, she saw the defendant and K.M. holding hands

many times underneath the table.  K.M. was often alone with the defendant in his

office and the door would be closed.  Sometimes when K.M. exited the office, her

shirt would be messy and she would go straight to the bathroom to reapply her

lipstick.  According to Romanow, during a conversation between her and K.M. in

February 1994, K.M. acknowledged having had oral sex with the defendant.

     Jeff Gardner, K.M.'s cousin, testified that he was a student at the Grano

Karate School.  He often saw K.M. go into the defendant's office alone and close

the door.  Once, when he tried to open the door, he found it to be locked.  When

he went out to eat after class, many times he saw the defendant and K.M. holding

hands under the table and noted their hands to be moving around beneath the

defendant's jacket.  The defendant often dropped Gardner and K.M. off at K.M.'s

home after class.  Once, the defendant came into K.M.'s home, and Gardner saw him

kiss K.M. as she walked him out the door.

     Jeff DiGangi, a friend of the defendant, testified that from August 1993

through February 1994, he attended classes at the Grano Karate School.  Classes

were held at the school four days each week.  DiGangi arrived between 4 and 4:30

p.m. and the first classes started about 5:30 p.m.  He testified that K.M. would

show up at 5:30 p.m. when she had to instruct class or later to attend her 8:30

p.m. class.  The door to the defendant's office was always open.  He never saw

K.M. and the defendant alone in the office and never saw them hold hands when the

group went out to dinner after class.  On April 14, 1994, he confronted K.M.

about rumors he had been hearing regarding K.M. and the defendant.  K.M. denied

having had oral sex with the defendant but confirmed that the defendant had

"fingered" her.  DiGangi also testified that K.M. had a reputation among students

at the school for not telling the truth. 

     Several other students at the Grano Karate School testified for the

defendant.  Denise Fessenden testified that she attended classes on Tuesdays and

Thursdays.  She arrived between 8 and 8:30 p.m.  K.M. always arrived late to

class.  Although the door to the defendant's office was closed at times, people

would still enter the office without knocking.  Fessenden also testified as to

K.M.'s reputation for lack of truthfulness.  Eric Jaegar testified that in early

1994 he was always the first to arrive at the karate school and that K.M. never

arrived before 6:30 p.m.  The defendant usually did not arrive until 7:30 p.m. 

Robert Mercier testified that his son had been attending the Grano Karate School

for four years.  He usually arrived at 6 p.m.  The door to the defendant's office

was always open.

     Kathleen Wilson, K.M.'s aunt, testified that she had a conversation with

K.M. early in 1994 regarding allegations that K.M. had made against the

defendant.  According to Wilson, K.M. told her that she had been involved in a

relationship with the defendant and that he was pressuring her to do things. 

When Wilson asked if that included oral sex, K.M. responded with a shrug, which

Wilson took to mean yes.

     Sean Contreras, the defendant's nephew by marriage and business partner,

confronted K.M. with the rumors he had heard about her and the defendant.  K.M.

was very upset, sobbing, and hesitant.  She told him that the defendant "went

down my pants and touched my breasts" but vacillated in her response as to

whether she had engaged in oral sex with the defendant.  Contreras observed K.M.

to be alone with the defendant in his office with the door closed for 15 to 20

minutes on two occasions.

     Robert Holguin, an investigator with the Du Page County Children's Center,

testified that he interviewed K.M. and several other people.  According to

Holguin, K.M. told him that she and the defendant had begun a physical

relationship in the six or seven months prior to February 1994.  That

relationship began with kissing, then progressed to fondling of her breasts and

vaginal area.  Eventually, the defendant inserted his fingers into her vagina. 

The physical contacts would occur two to four times per week, at the karate

school, in his car, and once at K.M.'s home while her parents were away.  

     The jury returned a verdict of guilty on the criminal sexual assault

charges.  The defendant was later sentenced to four years' imprisonment.  He

filed a timely appeal.

                                 ANALYSIS

     On appeal, the defendant raises seven issues for our review.  He contends

that (1) he was denied his constitutional right to a fair trial as a result of

prosecutorial misconduct; (2) the trial court improperly barred evidence under

the rape shield statute; (3) the criminal sexual assault conviction must be

reversed because the State failed to prove him guilty beyond a reasonable doubt;

(4) the trial court erred in denying his motion to suppress tape recordings of

conversations between him and K.M.; (5) the trial court erred in denying his

motion to dismiss the indictment because the criminal sexual assault statute is

unconstitutionally vague; (6) the trial court abused its discretion in ruling he

was barred from presenting impeachment evidence on hearsay grounds; and (7) the

statutory sentencing scheme under which he was sentenced is unconstitutional.

     The defendant initially contends that he was denied his constitutional

right to a fair trial as a result of prosecutorial misconduct.  These alleged

instances of prosecutorial misconduct include: (1) inflammatory and prejudicial

remarks during closing argument; (2) improper questioning and elicitation of

answers from witnesses; and (3) improper reference to the uncontroverted nature

of the evidence.

     We first examine the alleged inflammatory and prejudicial remarks of the

prosecutor during closing argument.  

     A defendant is entitled to a fair trial free from prejudicial comments by

the prosecution.  People v. Cisewski, 144 Ill. App. 3d 597, 602 (1986). 

Nevertheless, a prosecutor is generally permitted great latitude in closing

argument, and the determination of whether this scope is exceeded depends upon

the facts and circumstances of an individual case.  Cisewski, 144 Ill. App. 3d

at 602.  In determining whether a prosecutor's closing comments or arguments

constitute prejudicial error, reference must be made to the content of the

language used, its relation to the evidence, and the effect of the argument on

the rights of the accused to a fair and impartial trial.  People v. Bivens, 163

Ill. App. 3d 472, 482 (1987).  Improper remarks made during closing argument

constitute reversible error where they result in substantial prejudice to the

defendant or serve no purpose except to inflame the jury.  People v. Terry, 99

Ill. 2d 508, 517 (1984).  However, arguments and statements based upon the facts

in evidence, or upon reasonable inferences therefrom, are within the scope of

proper argument.  Terry, 99 Ill. 2d at 517.  A new trial will not be granted

unless the prosecutorial remarks are so prejudicial as to materially contribute

to a defendant's conviction.  People v. Collins, 127 Ill. App. 3d 236, 241

(1984).

     In the case at bar, the defendant takes issue with comments made during the

rebuttal closing argument by the prosecutor characterizing the defendant as

someone who liked to have sexual contact with 15-year-old girls.  Certain of

defense counsel's objections to the comments were sustained while others were

overruled.  The defendant argues that the remarks unfairly prejudiced the

defendant and served only to inflame the jury.  

     We have carefully reviewed the record and each objectionable remark.  We

note that the trial court admonished the jury that closing arguments were not

evidence.  With respect to the remarks to which objections were sustained, any

potential prejudice or alleged impropriety was cured when defense counsel's

objections were promptly sustained and the court properly instructed the jury. 

People v. Robinson, 199 Ill. App. 3d 24, 36 (1989).  With respect to the remarks

to which objections were overruled, we find them to have been reasonable

inferences based upon the facts in evidence and therefore to have been within the

scope of proper argument.  Even if we had found the remarks to have been

improper, we would not find them to be so prejudicial as to have materially

contributed to the defendant's conviction.  See People v. Walker, 259 Ill. App.

3d 98, 104 (1993).

     The defendant also takes issue with a comment made during the rebuttal

closing argument by the prosecutor characterizing the defendant as someone who

had similar inappropriate behavior with another young female, D.J.  Defense

counsel offered no objection to the comment.  Since no objection was raised at

trial, any error is waived.  People v. Lyles, 106 Ill. 2d 373, 392 (1985).

     We next examine the alleged improper questioning and elicitation of answers

from witnesses by the prosecutor.

     The defendant complains of portions of the prosecution's direct examination

of K.M. and cross-examination of defense witness, Contreras.  Specifically, the

defendant takes issues with the prosecution's questions concerning the

defendant's past sexual behavior with another female student at the karate

school, D.J.  The defendant argues that the introduction of evidence suggesting

that the defendant had a prior unlawful relationship with D.J. was highly

prejudicial, insinuating to the jury that the defendant had a propensity to

commit such acts, thus requiring reversal.   

     Again, we have reviewed the objectionable questions and answers elicited

by the prosecution.  With respect to the questioning of the victim, we find any

error to be waived since defense counsel made no objection thereto at trial. 

Lyles, 106 Ill. 2d at 392.  As to the questioning of Contreras, we note that

defense counsel's singular objection during the questioning was sustained. 

Moreover, we do not find the objectionable question to have materially

contributed to the defendant's conviction.  See Walker, 259 Ill. App. 3d at 104. 

     We also examine the alleged improper reference by the prosecutor to the

uncontroverted nature of the evidence.

     During closing argument, the prosecutor referred to the defendant's having

put his finger into K.M.'s vagina.  He then stated that there "is absolutely

uncontroverted evidence by [K.M.] that this act happened."  Defense counsel's

objection to the remark was overruled.  The defendant now argues that this remark

constituted reversible error because it was intended to direct the jury's

attention to the defendant's failure to testify and to rebut K.M.'s testimony. 

The State argues that the issue has been waived and is without merit in any

event.

     As a general rule, the failure to raise an issue in a written motion for

a new trial results in a waiver of that issue on appeal.  People v. Enoch, 122

Ill. 2d 176, 186 (1988).  Having reviewed the defendant's amended motion for a

new trial, we agree with the State that the defendant has failed to raise this

issue below.  The motion for a new trial does not specify the particular defect

now raised on appeal.  Accordingly, we deem this issue waived.  Had we not deemed

this issue waived, we would, nevertheless, resolve the issue in favor of the

State.

     A defendant has a constitutional right not to testify, and the prosecution

is forbidden from referring either directly or indirectly to the defendant's

failure to testify.  People v. Brown, 253 Ill. App. 3d 165, 175-76 (1993). 

However, the prosecution may refer to the uncontradicted nature of the evidence,

even where the defendant is the only person who could have contradicted the

evidence.  People v. Romero, 189 Ill. App. 3d 749, 757 (1989).  The test to

determine whether or not a defendant's right not to testify has been violated by

prosecutorial comments is whether the remarks were calculated to draw attention

to the defendant's failure to testify.  Lyles, 106 Ill. 2d at 390.  

     Nothing here indicates that there was a calculated effort by the prosecutor

to highlight the defendant's failure to testify.  No direct reference was made

to the fact that he did not testify.  Furthermore, the reference to the

uncontroverted nature of the testimonial evidence by K.M. was permissible and did

not amount to an indirect reference to the failure of the defendant to testify.

     The second contention of the defendant on appeal is that the trial court

improperly utilized the rape shield statute to bar testimonial evidence that K.M.

made prior allegations of sexual activity with other men and that such activity

never occurred.

     Prior to trial in the underlying action, defense counsel advised the court

that he wished to impeach the victim with the testimony of certain witnesses,

three witnesses who would testify that the victim told them that she had sex with

three other adult men, and three witnesses (the other adult men) who would

testify that they never had sex with the victim.  The State filed a motion in

limine to prohibit this questioning.  Acknowledging the defendant's right to

confrontation, the trial judge noted that in prosecutions for criminal sexual

assault the victim's prior sexual activity or reputation is generally

inadmissible under section 115--7 of Code of Criminal Procedure of 1963.  725

ILCS 5/115--7(a) (West Supp. 1995).  Finding no applicable exception to this

general rule, the trial judge granted the motion in limine. 

     The rape shield statute provides that, in prosecutions for criminal sexual

assault, the prior sexual activity or the reputation of the alleged victim is

inadmissible except as evidence concerning the past sexual conduct of the alleged

victim with the accused or when constitutionally required to be admitted.  725

ILCS 5/115--7(a) (West Supp. 1995).  Here, the trial court interpreted "sexual

activity or the reputation" of the alleged victim to include prior accusations

by K.M. of sexual misconduct toward her by other men.

     In this case, defense counsel made no representation that the complainant

had engaged in previous sexual activities.  Defense counsel sought only to

introduce evidence of the prior allegedly false statements for impeachment

purposes and advised the court of his intent.  The statute clearly was not

designed to preclude the admission of all evidence relating to sex.  We believe

that the legislature intended to exclude the actual sexual history of the

complainant, not prior accusations of the complainant.  Language or conversation

does not constitute sexual activity.  This is the same rationale utilized by the

appellate court in State v. Baron, 58 N.C. App. 150, 292 S.E.2d 741 (1982), in

determining the identical issue of whether evidence that a complainant had

falsely accused others of improper sexual advances on previous occasions was

admissible under a rape victim shield statute.  Since there was no contention

that the complainant ever engaged in sexual activity, there was no need to invoke

the statute to prevent the disclosure of K.M.'s prior statements accusing others

of improper sexual behavior toward her.  Defense counsel should have been allowed

to introduce the evidence in order to attack the credibility of the complainant.

     Relying on People v. Alexander, 116 Ill. App. 3d 855 (1983), the prosecutor

argues that the rape shield statute was properly applied to bar the subject

testimonial evidence.  In Alexander, the Appellate Court, First District, noted

that, while the general rule is that a witness' credibility may not be impeached

by specific acts of misconduct, other jurisdictions have made an exception where

the complainant has made prior false allegations.  Alexander, 116 Ill. App. 3d

at 860.  Other jurisdictions have required that either the complaining witness

admitted the falsity of the prior charges or that the charges have been

disproved.  Alexander, 116 Ill. App. 3d at 861.  We find the prosecutor's

reliance on Alexander to be misplaced.  In Alexander, defense counsel wanted to

cross-examine the complainant concerning two prior rape charges which she had

made.  The complaining witness did not admit the falsity of the prior charges. 

Moreover, the prior accusations were not proved false.  One of the prior

accusations terminated in a finding of no probable cause; the other culminated

in two hung juries.  The hung juries indicate only that the State did not prove

its case beyond a reasonable doubt.  Likewise, the finding of no probable cause

is silent on the reason for said finding.  Conversely, the defendant in the

instant case sought to specifically prove false allegations through testimony.

     We grant the defendant a new trial based on the trial court's erroneous

application of the rape shield statute to the facts of this case.  However, we

elect to address the defendant's remaining assignments of error since they are

likely to arise at a retrial. 

     The third contention of the defendant on appeal is that the criminal sexual

assault conviction must be reversed because the State failed to prove him guilty

beyond a reasonable doubt. 

     The defendant was convicted of criminal sexual assault under section 12--

13(a)(4) of the Criminal Code of 1961, which provides:

          "The accused commits criminal sexual assault if he or she:

                                   * * *

          (4) commits an act of sexual penetration with a victim who was at

     least 13 years of age but under 18 years of age when the act was committed

     and the accused was 17 years of age or over and held a position of trust,

     authority or supervision in relation to the victim."  720 ILCS 5/12--

     13(a)(4) (West 1994).

     A conviction must be based upon proof beyond a reasonable doubt.  People

v. Foules, 258 Ill. App. 3d 645, 653 (1993).  The reviewing court's duty is not

to ask itself whether it believes the evidence establishes guilt, but whether the

evidence viewed in a light most favorable to the prosecution would allow any

rational trier of fact to find the essential elements of the crime proved beyond

a reasonable doubt.  Foules, 258 Ill. App. 3d at 653.  A reviewing court may not

substitute its judgment for that of the trier of fact on questions involving the

weight of the evidence or the credibility of the witnesses.  People v. Winfield,

113 Ill. App. 3d 818, 826 (1983).  Reversal of a conviction is required only

where the defendant can show that the evidence is so unsatisfactory or improbable

as to create a reasonable doubt of the defendant's guilt.  People v. Murray, 194

Ill. App. 3d 653, 656 (1990).

     In the case at hand, K.M. testified that when she was 15 years old, the 38-

year-old defendant inserted his finger into her vagina.  The only eyewitnesses

to the alleged act of penetration were K.M. and the defendant.  The defendant

contends that K.M.'s testimony was inconsistent and contradicted, serving to

totally undermine the credibility of her testimony such that it could not be

relied upon to convict him of the charged offense.  

     The defendant notes that the statement which K.M. gave to the investigator

was inconsistent with her trial testimony concerning whether the defendant placed

one or more fingers in her vagina.  The defendant also notes that what K.M. told

Romanow and Contreras was inconsistent with her trial testimony concerning

whether she and the defendant had engaged in oral sex.  While we cannot negate

the existence of such inconsistencies, we find that the discrepancies were not

substantial and did not detract from the reasonableness of K.M.'s testimony as

a whole. 

     The defendant additionally argues that K.M.'s testimony was contradicted

with respect to whether she and the defendant ever were alone in his office with

the door closed and whether she and the defendant sat next to one another and

touched underneath the table when the class went out to dinner.  On the other

hand, the State points to the testimony of numerous witnesses who corroborated

K.M.'s accounts of graphic sexual conversations with the defendant, touching in

public dining establishments, kissing while at K.M.'s home, and private meetings

in the defendant's office.

     Here, the outcome of the case rested upon the credibility of one of the

only eyewitnesses to the act of penetration in question, K.M.  It is well settled

that a conviction may rest upon the testimony of a single witness, if positive

and credible, even where contradicted by the accused.  Murray, 194 Ill. App. 3d

at 656.  The jury, as trier of fact, was fully aware of the inconsistencies in

and contradictions to K.M.'s testimony.  Nevertheless, it chose to believe her

version of the events leading up to and including the act of penetration.  Under

these circumstances, we find that a rational trier of fact could have found the

defendant guilty of criminal sexual assault beyond a reasonable doubt.  

     A fourth contention of the defendant on appeal is that the trial court

erred in denying his motion to suppress tape recordings of conversations between

him and K.M. because the application for the telephonic eavesdropping order (1)

was not supported by reasonable cause and (2) was unlawful.

     This court has previously stated that suppression is required only where

there is a failure to satisfy any of the statutory requirements which directly

and substantially implement the legislative intent to limit the use of

eavesdropping procedures.  People v. Ellis, 122 Ill. App. 3d 900, 904 (1984).

     We first examine whether there was reasonable cause for authorization of

the eavesdropping device.  Section 108A--4 of the Code of Criminal Procedure of

1963 provides that a judge may authorize the use of an eavesdropping device when

he finds that one party to the conversation has consented to the use of the

device, there is reasonable cause for believing that an individual is committing,

has committed, or is about to commit a felony, and there is reasonable cause for

believing that particular conversations concerning the felony will be obtained

through use of the eavesdropping device.  725 ILCS 5/108A--4 (West 1994).  The

term "reasonable cause" as used in the statute is established when the totality

of the facts and circumstances existing at the time are sufficient to warrant the

belief by a person of reasonable conscience that an offense has been, is being,

or will be committed.  People v. White, 209 Ill. App. 3d 844, 876 (1991).  This

court has taken the position that the application for an eavesdropping order

should be viewed in a commonsense fashion, and neither proof beyond a reasonable

doubt that a crime has been committed nor a prima facie case need be established;

rather, only a probability of criminal activity need to be shown.  People v.

Stewart, 161 Ill. App. 3d 99, 105 (1987).  The issuing judge's conclusions

regarding the existence of reasonable cause are to be accorded great deference

by subsequent judges in reviewing his actions.  Stewart, 161 Ill. App. 3d at 105.

     We have reviewed the State's application for the order authorizing use of

the eavesdropping device.  We find the totality of the facts and circumstances

existing at the time of the application was sufficient to establish reasonable

cause for believing that the defendant had committed a felony against K.M. and

for believing that conversations concerning the felony would be obtained through

use of the eavesdropping device.   

     We next examine whether the application for issuance of the eavesdropping

device was lawful.  The defendant contends that it was unlawful because it was

not authorized by the State's Attorney.  On the other hand, the State contends

that the application was lawful because the application was authorized by an

assistant State's Attorney in the absence of the State's Attorney.

     Section 108A--1 of the Code of Criminal Procedure of 1963 expressly

provides: "The State's Attorney may authorize an application to a circuit judge

*** [for] an order authorizing or approving the use of an eavesdropping device

***."  725 ILCS 5/108A--1 (West 1994).  The defendant argues that the word "The"

in the statute shows a legislative intention that only the State's Attorney can

authorize application for use of an eavesdropping device.  In light of the

decision of the Appellate Court, First District, in People v. Silver, 151 Ill.

App. 3d 156 (1986), we disagree.  In Silver, the defendant offered a similar

argument to that asserted now on appeal.  The appellate court found the signing

of the application by an assistant State's Attorney after a good-faith attempt

to contact the State's Attorney to be merely a technical violation of the

statute.  Silver, 151 Ill. App. 3d at 159.  Where the State's Attorney was

unavailable, the appellate court refused to find that such a technical violation

undermined the purpose of the statute, which is to protect individual privacy

against unwarranted invasions.  Silver, 151 Ill. App. 3d at 159.

     In the case at hand, an assistant State's Attorney signed the authorization

for application and order approving use of the eavesdropping device.  While the

assistant State's Attorney erroneously signed his name on the signature line for

the State's Attorney rather than in the space below, the authorization expressly

states that the signature was in the absence of the State's Attorney.  Since the

State's Attorney was unavailable, we find the signing of the application by an

assistant State's Attorney to have been merely a technical violation of the

statute. 

     The fifth contention of the defendant on appeal is that the trial court

erred in denying his motion to dismiss the indictment because the criminal sexual

assault statute is unconstitutionally vague, resulting in a denial of due

process.

     The defendant first maintains that section 12--13(a)(4) of the Criminal

Code of 1961 (720 ILCS 5/12--13(a)(4) (West 1994)) is so vague it renders the

statute unconstitutional in general.  We disagree. 

     When a penal statute which does not involve first amendment freedoms is

challenged as unconstitutionally vague on its face, courts will invalidate the

statute only if no standard of conduct is specified at all.  Smith v. Goguen, 415

U.S. 566, 578, 39 L. Ed. 2d 605, 614-15, 94 S. Ct. 1242, 1249-50 (1974); People

v. Taylor, 138 Ill. 2d 204, 211 (1990).  In other words, to sustain a facial

challenge, the defendant must demonstrate that the law is incapable of any valid

application.  People v. Haywood, 118 Ill. 2d 263, 270 (1987).  

     In this case, the defendant does not contend that section 12--13(a)(4)

infringes upon any right protected by the first amendment, nor do we discern any

such infringement.  We must therefore consider whether the statute is capable of

any valid application.  In People v. Secor, 279 Ill. App. 3d 389 (1996), the

Appellate Court, Third District, faced a similar challenge to the general

constitutionality of section 12--13(a)(4) on vagueness grounds.  It found the

application of the statute to be unquestioned in circumstances such as those

involving baby sitters, teachers, day-care workers, priests and ministers, scout

leaders and a host of other positions of trust, authority or supervision.  Secor,

279 Ill. App. 3d at 395.  Accordingly, it did not find the statute facially

invalid.  In keeping with that decision, we do not find the statute to be

unconstitutionally vague on its face.          

     The defendant further maintains that section 12--13(a)(4) is

unconstitutional as applied to him in the present case.  Again, we disagree.  

     Under section 12--13(a)(4), the State is required to prove that the

defendant "held a position of trust, authority or supervision in relation to the

victim" when committing an act of sexual penetration.  720 ILCS 5/12--13(a)(4)

(West 1994).  The indictment in this case charged that defendant "held, as a

[k]arate instructor of [K.M.], a position of supervision in relation to [K.M.]." 

The defendant claims that the term "supervision" as utilized in the statute is

vague and undefined; thus, it fails to give fair notice of what conduct is

prohibited and provides no standards to guide police, judges, and juries in

determining when the statute is violated.

      Statutes enjoy a presumption of constitutionality.  People v. Caffrey, 97

Ill. 2d 526, 530 (1983).  Due process does not require impossible levels of

specificity; instead, a statute must convey sufficiently definite warnings that

can be understood when measured by common understanding and practice.  Secor, 279

Ill. App. 3d at 395-96.  

     Here, the defendant correctly points out that the term "supervision" is not

defined in the statute.  However, undefined words in a statute are presumed to

have their ordinary and popularly understood meanings.  People v. Anderson, 148

Ill. 2d 15, 28 (1992).  In denying the defendant's motion to dismiss the

indictment, the trial judge stated, "I think the cases are quite clear that

supervision has a meaning that everybody can understand."  Indeed, "supervision"

has been defined as involving the act of overseeing or inspection.  Secor, 279

Ill. App. 3d at 396.  Moreover, in arguments on the defendant's original motion

to dismiss the indictment, defense counsel acknowledged that "supervision is

something that can be [objectively] determined."       We believe the term is

sufficiently definite to warn a defendant of the type of conduct that is

prohibited and to channel the discretion of police, judges, and juries.  See

Secor, 279 Ill. App. 3d at 396.  We find that section 12--13(a)(4) is not

unconstitutionally vague as applied to this defendant.

     A sixth contention of the defendant on appeal is that the trial court

abused its discretion in ruling he was barred from presenting impeachment

evidence on hearsay grounds. 

     The admission of evidence is within the sound discretion of the trial

court, and its ruling should not be reversed absent a clear showing of abuse of

that discretion.  People v. McCarthy, 213 Ill. App. 3d 873, 881 (1991).  

     In the case at hand, defense counsel called Robert Holguin, investigator

with the Du Page County Children's Center, as a defense witness.  Holguin's

investigation of the charges against the defendant led to the defendant's

eventual indictment.  Holguin testified that he interviewed K.M. and several

others.  When asked whether during the course of his interviews with K.M. she had

ever given him different versions of the events that had transpired between K.M.

and the defendant, he replied in the negative.  Defense counsel next called the

defendant's wife to the stand.  In an offer of proof, defense counsel informed

the court that he would seek to elicit testimony from the defendant's wife that

Holguin previously had told her that he could not get the same story twice out

of K.M.  Defense counsel also informed the court that it could offer similar

testimony from another witness previously called on behalf of the defendant.  The

State objected to the proposed line of questioning directed at the defendant's

wife on hearsay grounds.  The State argued that the prosecutor was seeking to get

into evidence a statement allegedly made by Holguin characterizing K.M. as a liar

under the guise of impeachment of Holguin.  The trial court sustained the State's

objection to the line of questioning.

     Supreme Court Rule 238(a) provides that the credibility of a witness may

be attacked by any party, including the party calling the witness.  134 Ill. 2d

R. 238(a).  As a general rule, such an attack may be accomplished by impeaching

the witness with evidence of a prior inconsistent statement.  People v. Cruz, 162

Ill. 2d 314, 358 (1994).  The defendant argues that the trial court improperly

prevented the impeachment of Holguin by prior inconsistent statements allegedly

made to two defense witnesses.  

     Hearsay is an out-of-court statement offered to prove the truth of the

matter asserted and is generally inadmissible unless it falls within an exception

to the rule.  Laughlin v. France, 241 Ill. App. 3d 185, 192 (1993).  In criminal

cases, evidence of a statement made by a witness is not made inadmissible by the

hearsay rule if (1) it is inconsistent with the witness' trial testimony; (2) the

witness is subject to cross-examination at trial; (3) the statement explains an

event within the personal knowledge of the witness; and (4) the witness

acknowledged at trial that he had made the prior inconsistent statement.  People

v. Coleman, 187 Ill. App. 3d 541, 547 (1989).

     In this case, the prior statements alleged to have been by Holguin were

being offered not simply to impeach Holguin but to prove the truth of the matter

asserted, that K.M. was lying about her version of the events in question.  The

alleged prior statements are made inadmissible by the hearsay rule because at

trial Holguin denied having made the statements.  We find the trial court did not

abuse its discretion in barring introduction of the statements.   

     The final contention of the defendant on appeal is that the statutory

sentencing scheme under which he was sentenced is unconstitutional.

     A statute has a strong presumption of constitutionality, and the burden of

showing its invalidity is on the party challenging the enactment.  People v. La

Pointe, 88 Ill. 2d 482, 499 (1981).

     The defendant first contends that section 5--5--3 of the Unified Code of

Corrections (730 ILCS 5/5--5--3(c)(2)(H), (e) (West Supp. 1995)) is

unconstitutional because it violates the proscription against disproportionality.

     Courts are reluctant to invalidate penalties set by the legislature. 

People v. Bryant, 128 Ill. 2d 448, 456 (1989).  The constitutional guarantee of

proportionate penalties is violated where the penalty prescribed for an offense

is greater than the penalty prescribed for a more serious offense.  People v.

Tucker, 264 Ill. App. 3d 923, 925 (1994).  Legislative judgment will be

interfered with only if the punishment is cruel, degrading, or so wholly

disproportionate to the offense committed as to shock the moral sense of the

community.  People v. McGee, 257 Ill. App. 3d 229, 235-36 (1993), citing People

v. Gonzales, 25 Ill. 2d 235, 240 (1962).

     Here, the defendant received a mandatory four-year term of imprisonment for

the criminal sexual assault conviction.  The defendant argues that the sentencing

scheme is disproportionate to the nature of the offense.  We note that the

defendant does not argue, as is commonly done in cases involving claims of

disproportionality, that the offense for which he was punished resulted in a

sentence which is more severe than that imposed for a greater offense.  Focusing

solely then on the penalty for criminal sexual assault of a minor, while we

acknowledge that a mandatory sentence of four years' imprisonment is a strong

penalty, we cannot say that the penalty fixed in this case is disproportionate

to the nature of the offense. 

     The defendant also contends that section 5--5--3 of the Unified Code of

Corrections (730 ILCS 5/5--5--3(c)(2)(H), (e) (West Supp. 1995)) is

unconstitutional because it deprives him of equal protection.    Under

subsection (c)(2)(H) of the statute in question, criminal sexual assault is a

nonprobational offense unless the offender meets the criteria of subsection (e)

and "was a family member of the victim at the time of the commission of the

offense."  730 ILCS 5/5--5--3(c)(2)(H), (e) (West Supp. 1995).  Section 12--12

of the Criminal Code of 1961 defines family member as "a parent, grandparent, or

child, whether by whole blood, half-blood or adoption and includes a step-

grandparent, step-parent or step-child *** [or], where the victim is a child

under 18 years of age, an accused who has resided in the household with such

child continuously for at least one year."  720 ILCS 5/12--12(c) (West 1994).   

     In the present case, the defendant argues that his right to equal

protection is violated by this statute because it prohibits him from probation

as a nonfamily member of the victim, but it allows probation for the criminal

sexual assault offender who is a family member of the victim. 

     The equal protection clauses of the United States and Illinois

Constitutions do not guarantee that all persons will be treated equally; they

require only that there be a rational basis for a legislative classification that

differentiates between persons similarly situated.  People v. Blackorby, 146 Ill.

2d 307, 318 (1992).  If any set of facts may be reasonably conceived which would

justify the classification by the State, it must be upheld.  People v. McCabe,

49 Ill. 2d 338, 340-41 (1971); People v. Toliver, 251 Ill. App. 3d 1092, 1099

(1993).

     We therefore must determine whether any rational basis exists to justify

the allowance of probation for the criminal assault offender who is a family

member of the victim as contrasted to the outright denial of probation for the

nonfamily member offender.  In People v. Robertson, 168 Ill. App. 3d 132 (1988),

the Appellate Court, First District, faced a similar challenge to the

constitutionality of section 5--5--3 on equal protection grounds.  The court

determined that a rational basis for the statute could be the legislature's

determination that probation should be offered as an alternative where the sexual

offense has occurred within the family unit in an effort to keep the family

intact and minimize the disruption to the other members.  Robertson, 168 Ill.

App. 3d at 137.  In People v. Madura, 257 Ill. App. 3d 735, 739 (1994), this

court recognized that subsection 5--5--3(e) was designed to allow latitude to the

trial court in considering the impact upon the child of a sentence against a

family member.  We find such latitude important even where the offender is simply

a person who has continuously resided in the victim's household for at least one

year.  

     We conclude that section 5--5--3 of the Unified Code of Corrections (730

ILCS 5/5--5--3(c)(2)(H), (e) (West Supp. 1995)) is constitutional and does not

violate defendant's right to equal protection.      

                                CONCLUSION

     For the foregoing reasons, we reverse the defendant's conviction, and the

cause is remanded for a new trial. 

     Reversed and remanded.

     McLAREN, P.J., and BOWMAN, J., concur.